STATE, TO USE OF INGRAM, Plaintiff in Error, *vs.* MORTON *et al.*, Defendants in Error.

1. In a suit upon an administrator's bond, where the breach assigned was, that the administrator had failed to pay over money to which the plaintiff was entitled as heir of the intestate, *it was held,* that the record of a former recovery in a suit on the same bond, where a similar breach was assigned, was only *prima facie* evidence that the amount claimed in the second suit was passed upon in the former one; and that parol evidence was admissible to show that it was not passed upon, although, under the declaration in the former suit, it could have been given in evidence.

2. An order of distribution, by the county or probate court, is not essential to the right of an heir to maintain a suit against the administrator for his distributive share of the estate.

### *Error to St. Louis Circuit Court.*

*Haight & Shepley,* for plaintiff in error. 1. The judgment in the former suit is only *prima facie* evidence that the cause of action sued upon in this suit was passed upon in that; and this presumption may be rebutted by parol evidence, even if the breaches in the two suits were identical, and though the declaration in the former suit is broad enough to cover the subject matter sued for in this. Phillips' Ev. Cowen & Hill's notes, 838. *Jackson* v. *Wood,* 8 Wend. Rep. 24, 25. 2 Johns. Rep. 227. 16 ib. 136. *Perkins* v. *Walker,* 19 Vt. Rep. 149. 4 T. R. 146. *Seddon* v. *Tutop,* 6 T. R. 607. *Bridge* v. *Gray,* 14 Pick. 60. 15 ib. 409. *Brown* v. *King,* 10 Mo. Rep. 56. The case of *Pinney* v. *Barnes,*

17 Conn. Rep. 420, was decided by a divided court, and does not meet this case. 2. The breaches assigned in the two suits were for distinct and separate causes of action—distinct as to *time*, distinct as to *amount*, and breaches of different conditions of the bond. The only breach sued for in the first suit, was the failure to pay over money received by the administrator. In this suit, one of the breaches assigned is the failure to make just and true accounts and proper settlements. This is certainly a different and distinct cause of action, and so the court seems to have thought, by allowing the plaintiff to recover nominal damages. But the true measure of damages for this breach, is the amount the plaintiff failed to prove at the former trial by reason of the failure to include it in the settlement. *Devon* v. *Pittman*, 3 Mo. 179. 3. The court improperly refused the first instruction asked by plaintiff. *Bagot* v. *Williams*, 3 B. & C. 235. 4. No order of distribution by the county court was necessary to enable the plaintiff to recover. The statute does not require it. Under the facts of this case, it would be impossible to obtain it, and the law never exacts impossibilities. R. C. 1825, sec. 20. 4 Mo. Rep. 426. 3 ib. 127. 10 ib. 726.

*Bates* and *Dayton*, for defendants in error. The recovery in the former suit was a bar to a recovery in this. The evidence shows that all the money the administrator ever had in his hands, was received by him long before the first suit was brought. In that suit, with the requisite evidence, there could have been a recovery of Hannah Ingram's entire share in the estate. The sum alleged in the breach to have been in the hands of the administrator for distribution, and not distributed, was large enough for that purpose. *Pinney* v. *Barnes*, 17 Conn. Rep. 420. 1 McLean, 450. 15 J. R. 432. 3 Howard, 87. 16 J. R. 138. 10 Mo. Rep. 56.

RYLAND, Judge, delivered the opinion of the court.

Prior to the 18th of September, 1828, Arthur Ingram and Henry Reilly were partners, doing business in the city of St.

Louis. Ingram died a short time before that date, and his brother, Thomas Ingram, on that day took out letters of administration on said estate, and gave bond in the sum of $40,000, with Robert Rankin, Joseph C. Laveille and George Morton as securities, conditioned that said administrator should make a true inventory of the property of the deceased which should come to his knowledge or into his possession, and that he should administer according to law, all the said property that might come into his hands, possession or knowledge, and make, or cause to be made, just and true accounts of his administration, and make proper settlements thereof, from time to time, according to law or the judgment of any court having jurisdiction, and should perform all other matters and things touching said administration, as were or should be provided by law or enjoined by the order, sentence or decree of any court having competent jurisdiction.

On the 25th February, 1842, this suit was commenced on said bond, in the St. Louis Circuit Court, against George Morton, Robert Rankin and Joseph C. Laveille, upon an alleged breach of said bond, in that before the commencement of said suit, on the 30th May, 1834, there had come to the hands and possession of said Thomas Ingram, administrator, the sum of $6,235 14, which had been paid him by John P. Reilly, as administrator of Henry Reilly, deceased, which was never accounted for by said administrator, in any settlement made by him.

The declaration alleged, that Hannah Ingram, to whose use this suit was brought, was one of the heirs and distributees of Arthur Ingram, deceased, and as such, entitled to one thirteenth part of said sum, and, by the death of Mary Ingram, another of said heirs and distributees, was entitled to one twelfth part of her share, which was also one thirteenth.

There were three breaches assigned : 1st, that the administrator never accounted for said sum, though it remained in his hands more than three years after the granting of letters and after payment of all demands against said estate ; 2d, that he

did not well and truly administer goods and chattels and effects which came into his hands before the commencement of suit, to-wit, on the 20th May, 1834, but did convert the same to his own use; 3d, that said administrator did not make, or cause to be made, just and true accounts of his administration, nor make proper settlements thereof from time to time, according to law.

The defendants pleaded, first, the general issue; second, that the debts due from the estate of said Arthur Ingram, were not paid by said Thomas Ingram in his life time; third, that a suit was commenced by said plaintiff, in November, 1836, against said defendants, upon the same bond, for the breach thereof, in not paying over by said Thomas Ingram to said Hannah Ingram, the money due her as distributee of the estate of Arthur Ingram, deceased, and in that suit, on the 29th March, 1841, judgment was rendered in favor of plaintiff, to use of Hannah Ingram, against said Morton, Laveille and Rankin, in the sum of $495 56 as damages, and that the recovery in said action was for the same breaches of the condition of said bond as are set forth in the declaration of this suit; fourth, that there were debts of the estate of Arthur Ingram remaining unpaid at the death of the administrator, of which the administrator had been duly notified, which, at the time of the death of the administrator, had not been closed, and that more than seven years had elapsed before the bringing of this suit.

The plaintiff filed a similiter to the first plea, to the third plea replied, that the recovery set forth in that plea was not for the same breaches of said bond set forth in the declaration in this suit, and plaintiff demurred to the second and fourth pleas, which demurrer was by the court sustained.

In the progress of the case, Rankin and Laveille died, and their representatives were made parties. Upon the trial of the case, the plaintiff introduced evidence tending to prove that Hannah Ingram was one of the sisters of Arthur Ingram; that at the time of his death, there were eleven brothers and sisters

living, as well as his father and mother ; that afterwards, Mary Ingram died unmarried and without a will ; that Thomas was one of the brothers of Arthur, and that he died in July or August, 1834 ; that John P. Reilly was administrator of Henry Reilly, the surviving partner of Ingram & Reilly, and that as such administrator, he did, on or after the 20th day of May, 1834, pay to said Thomas Ingram, as administrator of Arthur Ingram, the sum of $6,235 14, and which amount had been on that day allowed against John P. Reilly, administrator of Henry Reilly, in favor of Thomas Ingram, administrator of Arthur Ingram.

The plaintiff gave in evidence a certified copy of the letters of administration upon the estate of Arthur Ingram, granted to Thomas Ingram, on the 18th September, 1828, and a certified copy of the bond executed by said Thomas Ingram, George Morton, Joseph C. Laveille and Robert Rankin. The plaintiff then rested, and the defendants gave in evidence the record, proceedings and judgment in a suit commenced on the 18th October, 1836, by the State of Missouri to the use of Hannah Ingram, against said Morton, Laveille and Rankin, upon the same bond sued on in this case ; and in the declaration in that case, it was assigned for breach, that before the commencement of that suit, to-wit, on the 15th February, 1833, the said Thomas Ingram had, after payment of all demands exhibited against said estate, in his hands, as administrator, the sum of $14,362 22, and of that amount that the sum of $1,104 78 and $92 06½ was due by said Thomas Ingram and was not paid. In that suit judgment was rendered on the 29th day of March, 1841, for $495 56.

The plaintiff, in rebuttal, gave in evidence the annual settlements of his administration of said estate of Arthur Ingram, made by Thomas Ingram, as administrator, with the county court of St. Louis county, and the record and proceedings of said court in relation thereto, in which settlements the last amount credited, as having been received by said Thomas Ingram, was at the February term, 1832, of $2,437 43, as hav-

ing been received from John P. Reilly, administrator of Henry Reilly, and which settlement showed, on the 15th February, 1843, a balance in favor of said estate of $14,362 22, in the hands of said Thomas Ingram, by the judgment of the county court. The record of the county court showed that on the 20th May, 1834, an order was made by said court that Thomas Ingram, the administrator, pay over to the father and mother, brothers and sisters of said Arthur Ingram, (fourteen in number,) one thousand dollars each.

The plaintiff also gave evidence tending to show, that the judgment rendered in the suit, the record of which was given in evidence by the defendants, was for the amount ordered to be distributed by the county court, and that there was no other evidence of the amount then due said Hannah Ingram from said administrator and securities, than that furnished by the records of the county court.

The plaintiff asked the following instructions, which were refused by the court, and the plaintiff excepted :

1. If the jury believe from the evidence, that the cause of action for which this suit is brought, was for a different and distinct sum of money from that for which the former suit was brought, of which the record has been given in evidence, and if the jury find from the evidence, that Thomas Ingram, after the last settlement given in evidence, received from the administrator of Henry Reilly the sum of $6,235 14, and at the time of bringing the first suit the plaintiff had no knowledge or information that said last mentioned sum had been received by said administrator, they will find for the plaintiff the share of said last mentioned sum belonging to said plaintiff as distributee of the estate of her brother.

2. If the jury believe from the evidence, that the demand sued for in this suit is distinct and different from that on which judgment was rendered in the suit, the record of which has been read in evidence on the part of the defendants in this suit, they will find for the plaintiff. There is no fact for the jury presented by the record in this case, except on the plea of a

former recovery for the same cause of action, and on that issue the jury are instructed they should find for the plaintiff, if they believe from the evidence, that the demand sued for in this suit is distinct and different from that on which judgment was rendered in the suit, the record of which has been filed in evidence.

The defendants asked the following instruction, which the court gave, and plaintiff again excepted :

" If the jury find from the evidence, that the $6,235 14 claimed in this case to have been received by Thomas Ingram was so received by said Ingram before the commencement of the former suit given in evidence, they will find for defendants in respect to said sum."

The court then gave the following instruction asked by the plaintiff :

" In actions on bonds for the performance of covenants, all breaches, well assigned, are admitted, unless there is an issue tendered by plea on such breaches, and in this case there is no plea to the breaches assigned, except the plea of former recovery for the same cause of action, and all others in the declaration are admitted."

The jury, thereupon, found a verdict for the plaintiff for five cents damages, upon which judgment was rendered with costs, and in due time plaintiff filed a motion for a new trial, which was overruled, and to which overruling plaintiff excepted, and now brings the case, by writ of error, to this court.

1. The only question necessary for the notice of this court is, the one relating to the former recovery.    There were two actions on this same bond : one commenced on the 13th October, 1836, and the other (the one now before the court) on the 25th February, 1842.    In the first action, the breach set forth was, that more than three years after the grant of letters of administration to said Thomas Ingram, jr., and before the commencement of this suit, to-wit, on the 15th February, 1833, and after the payment and satisfaction of all demands exhibited against the estate of Arthur Ingram, deceased, there remained in the hands of said Thomas Ingram, jr., as admin-

istrator, to be distributed among the distributees, $14,362 22. That the relator, Hannah, was entitled to one-thirteenth part of this sum, which was $1,104 78, and also to one-twelfth part of the distributive share of Mary Ingram, one of the distributees of Arthur Ingram, deceased, who had died since the death of Arthur, which one-twelfth amounted to $92 06½. The breach further states, that these said sums have not been paid, and concludes, to the damage of said Hannah of $2,000.

To this declaration, the defendants plead, 1st, *non est factum;* 2d, that Thomas Ingram, jr., as administrator of Arthur Ingram, had not in his hands said sum of $14,362 22 after the payment and satisfaction of all demands exhibited against the estate of said Arthur Ingram, to be distributed among the distributees, &c. ; 3d, payment of the distributive share to said Hannah Ingram by said Thomas Ingram, jr., administrator in his life time.

This case, on the issues here presented, was submitted to the court, and the court found the issues for the plaintiff. On the second issue the court found that Thomas Ingram, jr., as such administrator, had in his hands said sum of $14,362 22, after the payment and satisfaction of all demands as alleged in the breach ; and on the third issue, that he had not paid said Hannah her distributive share, and found that said Hannah had sustained damages by reason of the premises in her declaration mentioned, to the sum of $495 56, and gave judgment for that sum.

The declaration in the present action alleges as a breach, that on the 20th day of March, 1834, there had come to the hands and possession of said Thomas Ingram, administrator as aforesaid, a large sum of money, to-wit, the sum of $6,235 14, the same having been paid to him, as administrator, by one John P. Reilly, as administrator of Henry Reilly, deceased, which sum the said Thomas never accounted for in any settlement made by him as such administrator, and which has remained in his hands more than three years after the grant of the letters of administration, and before the commencement

of this suit, to-wit, on the 20th May, 1834, after the payment and satisfaction of all demands exhibited against the estate of said Arthur Ingram, to be distributed among the distributees of said Arthur; that said Hannah is one of these distributees, and as such is entitled to $479 62, being one-thirteenth part of this sum, and also to one-twelfth of Mary Ingram's share, which amounts to $39 96, which sums said Thomas, in his life-time, and his successors since have refused to pay, &c. There were other breaches which I shall not notice.

The defendants filed several pleas, of which I shall notice one only—the former recovery.

This plea alleges, that a suit was commenced in November, 1836, between the said plaintiff and the defendants, on the same bond, for the breach thereof, in not paying over by said Thomas Ingram, jr., to said Hannah, the money due her as distributee of the estate of Arthur Ingram, deceased, and in that suit, on the 29th day of March, 1841, judgment was rendered in favor of plaintiff, to the use of Hannah Ingram, against said defendants, for the sum of $495 56, as damages, and that the recovery in said action was for the same breaches of the condition of said bond, as are set forth in the declaration in this suit.

To this plea plaintiff replied, that the recovery therein set forth, was not for the same breaches of said bond set forth in the declaration in this suit, &c.

The instructions asked by the plaintiff, as well as by the defendants, and which appear in the statement of the case, present the questions of law upon the subject of " former recovery."

In the opinion of this court, the instructions numbers one and two, asked by the plaintiff, ought to have been given; and the one given for defendant should not have been given.

I will notice, briefly, a few authorities upon this subject of former recovery; it has been before this court previously, and I might rest upon these decisions.

5—VOL. XVIII.

" When a former judgment is shown, by way of bar, whether by pleading or in evidence, it is competent for the plaintiff to reply, that it did not relate to the same property or transaction in controversy in the action to which it is set up in bar, and the question of identity, thus raised, is to be determined by the jury upon the evidence adduced, and though the declaration in the former suit may be broad enough to include the subject matter of the second action, yet if, upon the whole record, it remains doubtful whether the same subject matter was passed upon, it seems that parol evidence may be received to show the truth." " Thus, where the plaintiff in a former action declared upon a promissory note and for goods sold, but upon executing the writ of enquiry after judgment by default, he was not prepared with evidence on the count for goods sold, and therefore took his damages only for the amount of the note, he was admitted, in a second action for the goods sold, to prove the fact by parol, and it was held no bar to the second action." 1 Greenl. Ev. sec. 532, and note 2.

In the case of *Seddon et al,* v. *Tutop,* 6 Term Rep. 607, it was held, that in an action on a promissory note and for goods sold, after judgment by default, and on a writ of inquiry of damages, the plaintiff gave no evidence on the count for goods sold, and took judgment for the amount of the note, that this judgment was no bar to an action afterwards brought for the goods sold. Lord Kenyon said, " There cannot be two opinions respecting the justice of this case. It is admitted that the plaintiff had two demands against the defendant, one on a note, the other for goods sold. In executing the inquiry in the former action, evidence on the note only was given. The plaintiff recovered damages adapted to that demand, and the other demand for goods still remains unsatisfied." In the same opinion his lordship said : " This is a question of great delicacy. We must take care not to tempt persons to try experiments in one action, and when they fail, suffer them to bring other actions for the same demand. The plaintiff who brings a second action ought not to leave it to nice investiga-

tion to see whether the two causes of action be the same : he ought to show, beyond all controversy, that the second is a different cause of action from the first in which he failed. In this case it is clearly shown, that this demand was not inquired into in the former action." Grose, J., said : " The recovery in the former action is only *prima facie* evidence that this demand has been inquired into, but it is not conclusive." Lawrence, J., said : " The principle on which this case depends is not new. It is the same as that on which the case of *Hitchen* v. *Campbell* was decided. There the parties went into evidence to see whether the former verdict was for the same cause of action ; but there would have been no occasion to have gone into that evidence, if the defendant could have contented himself with showing that there had been a former verdict, and that the demand for which the second action was brought, existed prior to the first action."

In the case of *Snider & Van Vechten, Ex'rs* v. *Croy*, 2 Johns. Rep. 229, Kent, chief justice, said : " The plaintiffs are, in justice, entitled to recover ; for it is manifest, from the facts disclosed by the replication, that their testator never received any compensation for the injury now complained of. The present demand has never been satisfied, and the record of the former recovery is no bar, because it is clearly shown by the replication, that the present trespass was not inquired into in the former action. A recovery in a former action, apparently for the same cause, is only *prima facie* evidence that the subsequent demand has been tried, but it is not conclusive."

In the case of *Phillips* v. *Berick*, 16 Johns. 136, Spencer, J., said : " The question here is, whether a recovery by the plaintiff for work, labor and services which were said to have been done on the 8th March, 1817, was a bar to any other claim for work, labor and services done and performed before that time, although it should appear, not only that it was not the same work and labor for which a recovery had already been

had, but that it was an entirely disconnected and distinct piece of service. The decision of the court below, by the generality of its decision, precluded any inquiry into the facts whether the demand for work and labor which the plaintiff offered to prove, had been submitted to the jury on the former trial, and whether it had not been performed under a distinct contract; for the court below ruled that the record was conclusive to show that every demand which the plaintiff had against the defendant for work and labor before the 8th March, 1817, had been tried and determined, and that the plaintiff should not give evidence of any such demand, thus precluding him from showing that the work and labor claimed in this action, had not been passed upon, and that it arose from a distinct and independent contract. In this, the court below erred." After referring to the cases of *Snider & Van Vechten* v. *Croy*, and *Seddon and others* v. *Tutop*, the judge proceeds thus : " Now, evidence that establishes a fact *prima facie*, may be overthrown by proof that the presumption which the law raises, is not consistent with the real truth of the case."

If the record shows that the first suit was apparently for the same cause of action sought to be litigated a second time, it will be *prima facie* evidence that such cause of action has once passed in *rem judicatam*, and the onus will devolve upon the party against whom the record is used, to show the contrary. And this he should do by no equivocal, but by clear and decisive testimony, which would remove all reasonable doubt. Cow. & Hill's Notes to Phil. Ev. 838.

In *Bridge* v. *Gray*, 14 Pick. 59, Ch. Jus. Shaw said : " On the issue joined upon the plea in bar, of a former recovery, the defendant relied upon a judgment in a former suit, upon a writ containing among others, counts for goods sold and delivered, and which might have embraced the goods sued for in this action ; but there was no specific enumeration or description of goods contained in these counts, nor any amount annexed to the writ or other specification filed, by

which it could be shown that the goods in question in this suit, were embraced in that. The defendant relied on that judgment as a bar, and as conclusive evidence that the claim for goods sold, now made in this suit, must have been considered in the former. But the plaintiff offered evidence *aliunde*, to show, in point of fact, that no claim was made in that action for the goods now sued for. We think that this evidence was rightly admitted."

The modern mode of declaring in most general use is, to insert several general counts; and when, in such case, the general issue is pleaded, a vast variety of different claims may be put in issue and tried; so various, indeed, that in most cases it is found necessary to call in the assistance of the court previously to the trial, to require the plaintiff to give in a bill of particulars, or specification of the claims which he means to give in evidence, in order to apprize the defendant of the actual claims relied on, which the declaration does not do, to enable him to go to trial with any safety. When such a judgment is pleaded in bar, it seems to be liberal enough and going as far to support a judgment as experience will warrant, to consider it *prima facie* evidence of a prior adjudication of every demand which might have been drawn into controversy under it, leaving it like other *prima facie* evidence, to be encountered and controlled by any other competent evidence tending to show that any particular demand was not offered or considered; and so we think the rule is now settled by authorities."

In *Perkins* v. *Walker*, 19 Vt. 149, Bennett, judge, said: " When the question determined by a former jury has come before them, as one point among many raised on the general issue, or upon a general plea in bar, putting in issue a number of facts, it cannot appear from the record, what precise point had been determined in the former proceeding.

" In such a case, parol evidence is necessary to show the point passed on. The parol evidence does not, in such case,

impeach the record, but is consistent with it. Though you cannot *add to* or *contradict* a record by parol evidence, yet you may explain it. Unless parol evidence is admissible for the purpose of connecting the *general estoppel* of a judgment with particular points litigated at the trial, and upon which the verdict of the jury proceeded, the rule which provides that the same matter shall not be twice drawn into controversy, must lose much of its practical and salutary effect." " I am aware," says the same judge, " that the idea has been countenanced by adjudged cases, that to. constitute a former verdict an estoppel, an issue must have been taken upon the face of the pleadings upon the *precise* point which is drawn in question in the second suit; and that it must be pleaded in such suit by way of estoppel. This may be necessary to constitute a *technical estoppel.* · If the pleadings do not show the *precise point* litigated in the former proceedings, the identity of the point in dispute, in the two actions, must be made out by parol evidence; and whether made out or not, is for the jury, under proper instructions from the court. Where the identity is fully made out, to hold that the proceedings in the first suit are not *conclusive, as evidence upon the right*, is to render that axiom of the law, " *nemo debet bis vexari pro eadem causa*," in a great measure of little value."

The case of *Lord Bagot* v. *Williams*, 3 Barn. & Cres. was an action of assumpsit—plea, former recovery—replication denying it to be the. same cause of action. Upon the trial, it appeared that the defendant had been the steward of the plaintiff, and in that character, between November, 1821, and April, 1822, had received various sums of money arising from the sale of the plaintiff's timber, exceeding considerably £3,400. In June, 1822, he received two other sums on plaintiff's account. In September, 1822, he ceased to be the plaintiff's steward. The steward who succeeded the defendant was called as a witness, and he stated, that in August, 1822, he investigated the defendant's accounts, and found that there was

due from him to the plaintiff a sum of £7,000 ; that, in the estimate, he took into consideration all the sums claimed in the present action, except the sum of £46, which the defendant had received at Christmas, 1821. The fact that the defendant had received that sum, had only come to his knowledge since the judgment in the first suit. After witness had investigated the accounts, he directed the action to be brought in the inferior court for £4,000, and judgment. having passed by default, he verified for £3,400 only, because he thought the defendant had not in value any property exceeding that sum.

Upon these facts, the learned judge was of opinion, that whatever constituted a subsisting debt, at the time when the proceeding in the inferior court was instituted, and was known to be so by the agent who managed the whole transaction, was to be considered as included in and constituting one entire cause of action ; and he, therefore, directed the jury to find for the plaintiff for £46 only, but reserved liberty for the plaintiff *to increase the verdict as the court should afterwards direct.* A rule *nisi* for this purpose was obtained, but afterwards discharged. In this case, Abbott, chief justice, said : " It appears that the parties did not go before a jury upon a writ of inquiry, but that judgment having passed by default, the agent of the plaintiff, by his affidavit of verification, proved the debt and fixed the amount ; he thereby put himself in the place of a jury ; whatever facts were known to him, therefore, may be considered in the same light as if they had been laid in evidence before a jury, and they had drawn a conclusion from them. And if a jury, after having in evidence before them, all the facts which were known to the plaintiff's agent, had found that £3,400 was the sum due, it is quite clear that the plaintiff could not maintain a second action in respect to any of the sums of money which had been brought under the consideration of the jury. In this case, the plaintiff's agent proved that he was aware, at the time when the action was commenced in the inferior court, that all the sums now

claimed in the present action, were due to the plaintiff, except the sum of £46, and that being so, I am of opinion that all the other items must be considered as constituting the causes of action in respect of which the judgment was recovered."

In this case, it seems the judge laid some stress upon the witness substituting himself for the jury; and all the facts that the witness knew in respect to the indebtedness, were considered as evidence before a jury to be passed upon. Yet, the item of £46, which had been received about Christmas, 1821, by the defendant, and which was not known to the witness, was supposed not to be included in the indebtedness before the jury, because the witness who stood in the place of the jury, did not know it; that is, there was no proof of this item; it was not passed upon and can now be recovered. The principle in this case, is applicable to the one now before us. The defendant, Thomas Ingram, was acting in a fiduciary character; it was his duty to charge himself with the moneys received by him belonging to the estate of Arthur Ingram; he should have made his annual settlements, showing the situation of his accounts, as such administrator. It appears that, by his accounts, there remained in his hands a large amount of money belonging to the estate, which was liable to be distributed among the distributees of said Arthur Ingram. The plaintiff avers, in the first action, that this sum amounted in February, 1833, to $14,362 22.

In the second action the plaintiff avers, that said Thomas Ingram, administrator, received in May, 1834, the sum of $6,235 14 from John P. Reilly, administrator of Henry Reilly, which was never accounted for by him, as administrator.

Parol evidence may be necessary in this present action, to show that this last sum was not included in the amount charged as being in the hands of the administrator, in the first action; or it may be highly important to the defendants to prove that such sum was included in the amount on hand in February, 1833, and parol evidence may be the only means of ascertain-

State *v.* Morton.

ing these facts. These facts may be. proved by any competent testimony ; they are not contradictory to the record, nor do they add to it.

The instructions which the plaintiff asked were necessary, to enable the jury to do justice between these parties, for if this last sum of $6,235 14 was not included in the amount of $14,362 22, and was not before the jury on the trial of the first suit, on this bond, then that judgment should not conclude this plaintiff. If it was not before the jury in that case, how can it be said to have passed in *rem judicatam* between these parties? It was like the £46 in *Bagot* v. *Williams*, not in the mind of the witness, although received before the trial. It is not because the second cause of action·could have been brought before the jury in the first ; not because the plaintiff could have recovered in the first action for the very thing sued for in the second, that the judgment in the first bars the recovery in the second, but because the jury in the first had the cause of action of the second before them, and passed upon it. If the plaintiff failed, in his testimony, to make good his action, and, nevertheless, lets the jury find against him, that will bind ; but if he gave no testimony of the cause in the second action, and that cause of action was not offered for them to pass on it, the recovery should be no bar, and can be no bar to this second action.

I admit that the case of *Penney* v. *Barnes*, in 17 Conn. 420, is against this doctrine, but I cannot agree with the majority of the court in that case. I consider the opinion of Chief Justice Williams much the better exposition of the law. I have unnecessarily. gone to more length in this opinion than the case called for. The case of *Brown* v. *King & Fisher*, 10 Mo. Rep. 56, and the case of *Bell* v. *Hoagland*, 15 Mo. Rep. 360, would appear to have settled the principles of the present case. The case of *Brown* v. *King & Fisher*, is direct authority upon this case, and should have been regarded as such by the court below.

It is not, in our opinion, of much weight, whether the plaintiff, in the first action, knew any thing about the receipt of the $6,235 by Thomas Ingram, administrator, from Reilly, administrator of Reilly, or not. If there was no such knowledge, it will be a very strong circumstance in proof, that such amount was not before the jury in the first trial, and was not included by them in their verdict.

In this action the plaintiff replies, that the sum of money received by the administrator of Arthur Ingram, in May, 1834, from Reilly, the administrator of Reilly, was not embraced in any of the breaches in the action on the bond against the defendants in the first action. Now, if it appear from the evidence, that Thomas Ingram, as administrator, had charged himself with this sum thus received, and upon his settlements this sum was included, so as to make the amount on hand in February, 1833, then this action cannot be maintained, for the very matter has before been adjudicated. Or, if it appear, by parol proof, that such amount so received was included in the sum of $14,362 22, then the plaintiff cannot recover for the like reason. But it should be left for the jury to find from the testimony, under proper instructions, whether this amount charged to have been received and never accounted for, was so received, and whether it was in proof before the first jury or not; or whether it was included in the accounts of the administrator and passed upon by the jury in the first action or not. This court will not let a plaintiff split up his demands into separate items and sue for each. Where there are accounts between parties, beginning and running through a space of time and then closed, it is but fair and right to bring the action for the whole account, and if a party does, and fails in his proof, and recovers a judgment in the suit on the account for a small part of it only, he will be concluded, unless it shall appear, that the portions not recovered were withdrawn from the jury, and that the jury did not pass upon such parts or items. Upon the whole case, then, it is the opinion of this

court, that the court below erred in refusing to give the plaintiff's instructions ; and also erred in giving the defendant's instruction, as appears by the statement.

2. The point about the order to pay over before action can be brought, has been heretofore decided by this court, and will remain undisturbed.

The judgment herein is reversed and the cause remanded, Judge Scott concurring. Judge Gamble not sitting in the case.