Sept. 29, }
  1910.   }

## BOSTON & MAINE RAILROAD *v.* STATE.

A petition for an abatement of taxes is a civil proceeding in which depositions may be taken and used.

Whether a witness who is summoned to give his deposition in a matter pending before the supreme court may properly refuse to answer certain inquiries of counsel and to produce documents described in a *subpoena duces tecum* is a question of law determinable by the court, and not by referees appointed to try the facts.

A witness has no greater right to withhold documentary proof in his possession than to refuse to answer orally as to matters within his knowledge; and in either case he must disclose the facts upon a proper demand, unless excused by some specific privilege.

Where a petitioner for an abatement of taxes alleges that property other than his is not appraised at its full value, any evidence which tends to show the true value of other property in the taxing district is material and relevant.

A witness who is not immediately interested in a proceeding for the abatement of taxes cannot refuse to disclose material and relevant facts as to the value of his own property, on the ground that such evidence will reveal the details of his private business affairs and may result to his pecuniary disadvantage.

The objection that evidence sought to be obtained by the taking of a deposition is irrelevant or incompetent must be made by the opposite party, and not by the witness; but if the inquiries are clearly illusory, and have no reference to the matter in issue, it is the duty of the magistrate, upon objection by the witness, to refuse to put the questions.

MOTIONS, by the plaintiffs, that two witnesses, duly summoned under a caption for the taking of depositions to be used on the trial of the plaintiffs' petition for abatement of taxes, be directed to answer certain inquiries put to them in the course of their examination and to produce certain documents in obedience to a *subpoena duces tecum* served upon each.

October 26, 1909, the plaintiffs filed in the supreme court a petition for abatement of the taxes assessed against them by the state board of equalization for the year 1909, and three referees were appointed to hear the parties and report the facts.    The petition alleges, in substance, that the board of equalization appraised the road, rolling stock, and equipment of the lines comprising the Boston & Maine system in New Hampshire at a sum in excess of the true value thereof, and also fixed the valuation of such property for purposes of taxation at a greater percentage of its true value than that placed upon all other taxable property in the state. For the purpose of showing whether the valuation of railroad

property was equal and proportional to the appraisal of certain property by the assessors of the city of Manchester, the plaintiffs duly summoned Thomas R. Varick, treasurer and manager of the John B. Varick Company, and William B. Burpee, treasurer of the Elliott Manufacturing Company, to testify before a magistrate authorized to take depositions. The *subpœna* served upon Varick directed him to produce the policies of insurance upon the property of the Varick Company; that served upon Burpee required the production of "all the books, papers, inventories or accounts in his possession or under his control, tending to show the stock in trade of the Elliott Manufacturing Company and the insurance thereon, for the years 1908 and 1909."

August 18, 1910, Varick appeared in response to the *subpœna*. He testified that he could not give any estimate of the amount of insurance carried upon the stock in trade of the Varick Company, and that he did not bring with him the policies mentioned in the *subpœna* because he considered that they were "our private business," and that it would be "an injury to our business to produce them." He declined to answer other inquiries as to the amount of insurance on the ground that the information sought to be elicited was irrelevant, and refused to furnish a schedule of the insurance without naming the companies which issued the policies. The witness also testified that the stock in trade of the Varick Company for the year ending April 1, 1909, was fairly worth from $140,000 to $150,000 and could be replaced for less than $250,000, but for how much less he was unable to state. He then testified that in September, 1909, he and his brother purchased the interests of two other owners in the Varick Company, but he declined to state the price paid therefor, on the ground that the transaction was his private business.

August 31, 1910, Burpee testified that he was unable to state the value of the average stock in trade of the Elliott Company for the year ending April 1, 1909, and had made no examination for the purpose of obtaining the information; that he supposed the accounts of stock were preserved, although he had made no attempt to find them and had not searched the books to learn what they would show; that he had not brought with him the books and documents enumerated in the *subpœna* and should decline to make any disclosure as to the stock accounts and insurance policies of the Elliott Company until he had consulted the directors and counsel.

September 6, 1910, counsel for the plaintiffs moved in the supreme court that each witness be ordered to answer the questions propounded to him and to produce the documents hereinbefore described.

*Branch & Branch* (*Oliver E. Branch* orally), for the plaintiffs.

*Edwin G. Eastman,* attorney-general, for the state.

*Patrick H. Sullivan,* orally, for the witness Varick.

*Burnham, Brown, Jones & Warren* (*Robert L. Manning* orally), for the witness Burpee.

PARSONS, C. J.   The plaintiffs' petition for abatement is a civil cause in which they have the right to take the deposition of any witness for use at the trial.   P. S., *c.* 225, *s.* 1 ; *Rancour's Petition,* 66 N. H. 172, 175 ; *Hayward* v. *Barron,* 38 N. H. 366.   Witnesses duly summoned having refused to disclose orally and by documentary proof facts claimed by both parties to be material to the issue, the parties are entitled to some procedure by which the question of law involved in the refusal to answer can be authoritatively settled with reasonable promptitude.   The only objection to the procedure adopted, and the only one considered, is the suggestion that the question of the witnesses' obligation to answer should be submitted to referees who have been appointed to try the facts.

Whatever rule may properly guide the referees in the admission or rejection of evidence when produced before them (*Doe,* J., in *Cocheco Mfg. Co.* v. *Strafford,* 51 N. H. 455, 476), and whatever power, if any, they may have to enforce their rulings by ordering the commitment of recalcitrant witnesses appearing before them at the trial, no ground is perceived upon which they have authority to control more than the trial which they have been commissioned to conduct.   If by agreement the question of the witnesses' obligation had been referred to them, their decision might have been morally and perhaps legally binding; but no such course has been adopted.   That upon commitment by the magistrate the referees would have had no jurisdiction of the witness' petition for release upon *habeas corpus,* is too plain for discussion.   Whether the witnesses' privilege excuses them from disclosure is a question of law which this court must decide for itself.

In this controversy between the plaintiffs and the state, in which the witnesses are not immediately interested, the witnesses complain that they are asked to disclose by oral testimony and the production of written matter in their possession details of their private affairs for the benefit of strangers.   The ground of their objection is not very clearly presented, but it seems to be, aside from a natural disinclination to make public disclosure of their business affairs, that such disclosure may in some way result to their pecuniary disadvantage.   " No subject shall . . . be compelled to . .

. furnish evidence against himself." Bill of Rights, *art.* 15. But this article relates to criminal proceedings only. *Wood* v. *Weld,* Smith (N. H.) 367, 368. It has not been suggested that response to the inquiries or the requests for the production of papers would tend to incriminate either of the witnesses.

There was at one time in England diversity of opinion whether a witness could be compelled to testify to facts which might expose him to a civil suit or to pecuniary loss, which was settled by a statute declaring that a witness cannot by law refuse to answer a relevant question upon the ground that the answer may tend to establish he owes a debt, or is otherwise subject to a civil suit. 46 Geo. III, *c.* 37 (May 5, 1806). This statute has generally been accepted in this country as correctly declaring the law. 1 Gr. Ev., *s.* 452; 3 Wig. Ev. *s.* 2223. It was so held in this state in 1825 (*Copp* v. *Upham,* 3 N. H. 159, 162), a conclusion that does not appear to have been since questioned. A witness has no greater right to conceal facts by withholding documentary proof of them in his possession than to refuse to answer orally to matters within his knowledge. There is no difference in principle between compelling proof of the truth by either method. *Bull* v. *Loveland,* 10 Pick. 9, 14; *Burnham* v. *Mowbray,* 14 Gray, 226, 240; *Amey* v. *Long,* 9 East 373; 3 Wig. Ev., *s.* 2193. In either case, the evidence when properly called for must be produced unless its production is excused by some specific privilege. That the disclosure may result in pecuniary loss to the witness or is personally distasteful to him is not such a privilege.

While the witnesses are naturally disinclined to disclose the details of their private business for the benefit of third parties, the duty to do so when required in the administration of justice is one devolving upon them as members of a civilized community. Except for such duty, the promise of protection to each member of the community by the twelfth article of the bill of rights, and of a certain remedy for wrong by recourse to the laws, declared to be the right of each subject by the fourteenth article, would be of no value. This remedy through judicial procedure is part of the protection guaranteed to each member of the community from the community, by the twelfth article, and to effect which each member is by the same article declared to be bound to contribute his share of the expense and to yield his personal service when necessary. There could be no judicial administration of rights without the personal service of members of the community, and their efforts as such officers would be futile if other members of the community possessing knowledge of, or other evidence as to, the controversy were not obliged to yield their services when necessary. The service rendered by the witnesses in appearance at the caption in obedi-

ence to the *subpœna* was doubtless not agreeable to them and was not performed without pecuniary sacrifice. Inconvenience, monetary loss, or disinclination they did not regard as an excuse for disobeying the *subpœna* requiring their presence. Neither is a valid excuse for failure to testify or obey the *subpœna duces tecum.* The service is one which they are constitutionally bound to render and for which they perhaps can obtain full recompense only when they may be compelled to ask like protection from the community. The constitution merely recognizes and declares, but does not create the duty. "Every person in the kingdom, except the sovereign, may be called upon and is bound to give evidence to the best of his knowledge upon any question of fact material and relevant to an issue tried in any of the queen's courts, unless he can show some exception in his favor." *Willes,* J., in *Ex parte Fernandez,* 10 C. B. N. S. 3, 39. "For three hundred years it has been recognized as a fundamental maxim that the public . . . has a right to every man's evidence." 3 Wig. Ev., *s.* 2192.

One issue in the principal case is at what rate the plaintiffs' tax should be assessed so that they may be taxed " at a rate as nearly equal as may be to the average rate of taxation . . . upon other property throughout the state." Unless such property throughout the state is appraised at its full value for taxation, the determination of the average rate involves something more than a mere arithmetical calculation. That in order to tax all property equally it is as necessary to value it by the same standard, as to take for the tax the same portion of the value when found, is a plain mathematical proposition which as matter of law has been so thoroughly considered by this court that comment is now uncalled for. The plaintiffs' claim, that property other than theirs is not appraised for taxation at its full value, makes an issue as to the true value of all taxable property in the state. The evidence sought from the witnesses, both oral and documentary, having some tendency to establish the value of the stock in trade of the two corporations, to which the inquiries were directed, was all material and relevant to the issue raised. Whether the price paid for certain interests the John B. Varick Company (one of the questions which a witness declined to answer) will be of weight in determining the value of the stock in trade of the company would seem to depend upon whether the stock in trade was or not the main element in determining the value of the interests sold and purchased. Upon that question opposite views are entertained by the witness and counsel for the plaintiffs. It may be that when the evidence is presented at the trial the matter, though relevant, will be found too remote to aid the triers. It is probable that the request that the questions

raised by the motions should be sent to the referees for determination is made with this thought in view.

But the statute authorizing the taking of depositions for use at the trial cannot be repealed to accommodate the witnesses. The history of the statute, detailed at length in *Hayward* v. *Barron,* 38 N. H. 366, shows that the rule which must govern at the taking of the deposition cannot be whether the matter will be competent at the trial, but must be merely whether it may be.  Briefly, the occasion for the statute was found in the inability of courts of law to authorize depositions to be taken *de bene esse* and used in trials before them.  It was the right of the parties to have all witnesses produced and examined *viva voce* before the jury.  If the personal attendance of the witness could not be secured, without the consent of the other party the evidence could not be obtained except by resort to equity and an auxiliary proceeding in aid of the suit at law.  Statutory relief, extended from time to time, was initiated in England in 1774.  13 Geo. III, *c.* 63, *ss.* 40, 44.

It has been suggested that the courts of this jurisdiction possessed greater power to provide for taking the depositions of absent witnesses than was entertained by common-law courts.  *Russell* v. *Fabyan,* 35 N. H. 159, 162.  Special authority was, however, conferred by the provincial statute of June 21, 1701.  Prov. Laws, *ed.* 1716, *p.* 20; 1 N. H. Prov. Laws. (Batch. ed.), *p.* 689.*  By this statute, power was given to take depositions when the witnesses, by reason of their going to sea, living more than twenty miles from the place where the cause was to be tried, age, sickness, or other bodily infirmity, were rendered incapable of travel and appearing in court.  The statute received various modifications detailed in *Hayward* v. *Barron;* but as it existed at the time that case was decided (C. S., *c.* 200, *s.* 13), the deposition of any witness could be taken, but could not be used unless facts existed at the time of the trial which were considered sufficient to establish

---

*Although the act of June 21, 1701, appears to be the earliest affirmative statutory authority in the province for the taking of testimony out of court, the subject was earlier considered in negative form.  An act passed May 28, 1686, provided: "That no *Affidavit* or Testimony is in any Civil Case to be taken out of the Court where the Tryal is Holden, except before some Member of the Council where the Witness is at a great distance from the Court, or incapable of coming, or *bound to Sea* before the Tryal, and *then* in presence of the Opposite party if he may be had, and seasonable Notice be given to him thereof: and all witnesses in *Criminal* Cases to give their Evidence in *open Court.*"  1 N. H. Prov. Laws (Batch. ed.), *pp.* 105, 817.

This act is perhaps explained by the act of May, 1647, adopted during the union with Massachusetts, which was as follows: "And it is ordered by this Court and the Authority thereof, That any one Magistrate or Commissioner

that the witness could not attend the trial.   As the reason for the
taking was the probable inability of the witness to attend the trial,
the necessity of inquiring as to all matters that might become com-
petent is apparent.   The contemplation of the statute was that the
witness would not attend the trial; and hence all matters not in-
quired about, as to which the witness might testify, would be lost
if not embraced in the deposition.

In 1867 (G. S., c. 210, s. 1), it was provided in the language of
the present law that the deposition of any witness might be taken
in a civil cause and used at the trial, unless the adverse party pro-
cured his attendance, so that he might be called to testify when the
deposition was offered.   This extension of the privilege may have
been due to the fact that the preparation of evidence in this way
in advance had been found of advantage in the conduct of trials,
or because it was desired to further relieve parties from the incon-
venience and expense attending the personal attendance of wit-
nesses, which had been considered an incidental object of the earlier
legislation.   *Hayward* v. *Barron*, 38 N. H. 366, 370.   But the
change only makes clearer the legislative object: the permissive
substitution of the deposition for the personal presence of the wit-
ness.   As the witness was not to be present if the deposition was
used, that method of presenting evidence could not be safely relied
upon unless the deposition contained all of the witness' knowledge
that might be competent.   To narrow the right of the party to
such interrogatories as would certainly be admitted upon the trial
would nullify the statute and defeat the legislative purpose.   To

---

Authorized thereunto by the General Court, may take the testimony of any
person of fourteen years of age, or above, of sound understanding and repu-
tation, in any Case, Civil or Criminal, and shall keep the same in his own
hands till the Court, or deliver it to the Recorder, public Notary or Clerk of
the writs, to be Recorded, that so nothing may be altered in it.   Provided
that where any such witness shall have his abode within ten miles of the
Court, and there living and not disenabled by sickness or other infirmity, the
said Testimony so taken out of Court, shall not be received or made use of in
the Court, except the witnesses be present also to be further examined about
it.   Provided also that in all Capital cases, all witnesses shall be present,
wheresoever they dwell." Ancient Charters & Laws of Mass. Bay 208.

The act of June 21, 1701, appears to have been disallowed in England.
1 N. H. Prov. Laws (Batch. ed.), *pp.* 689, 105, 711, 862, 867.   Despite such dis-
allowance, the act appears unchanged in the compilations of 1716 (*p.* 20), 1761
(*p.* 11), and 1771 (*p.* 22), and was finally repealed after the termination of the
colonial relation, on June 20, 1792.   Laws, *ed.* 1792, *p.* 402.   The repeal followed
the re-enactment and revision of the law of 1701, on February 9, 1791, both
the repeal and the new law going into effect on September 15, 1792.   Laws,
*ed.* 1797, *pp.* 102, 441, 450.

permit the witness to decline to answer questions which may be competent at the trial would repeal the statute and practically restore the situation existing before 1701. In fact, irrelevancy is no concern of the witness. The objection is one to be made by the party. If the opposite party does not object to the competency of the evidence, the witness cannot decline to disclose matters not privileged. The ordinary rule in taking depositions is that the magistrate puts the questions without attempting to rule upon their competency. In many cases it would be impossible to determine then whether the evidence will or will not be receivable at the trial. There may of course be an abuse of power. It would be possible to ask questions clearly illusory, having no reference to the matter in hand, solely for purposes entirely disconnected with the suit in which the deposition is ostensibly taken. If such were the case, it would be the duty of the magistrate, upon objection by the witness, to refuse to put such questions. *Ex parte McKee*, 18 Mo. 599, 601; 3 Wig. Ev., *s*. 2210. It is not to be apprehended that counsel will attempt such an abuse of process.

It is further suggested that the inquiries as to the value of stock in trade call for the exposure of trade secrets which are privileged. Upon what ground the average value of the stock in trade of a trading or manufacturing corporation can be called a " trade secret " has not been explained. But whatever view might be taken as between competitors in the same line of business, the amount of the stock in trade of such organizations is not a matter which, as it relates to taxation, they are privileged to keep secret. On the contrary, in order to enable the state to execute the sovereign power of taxation, such corporations are required to make a return to the taxing officers each year of the amount of such stock. P. S., *c*. 55, *s*. 7, *cl*. 6; *Ib*., *c*. 57, *ss*. 4–8. The matter is public—not secret.

In the legal search for truth made for the protection of members of the community, the parties and the state are entitled to all evidentiary matter in the knowledge or control of each member of the community which will aid the inquiry. As to some matters greater injustice would be done by compelling the witnesses to disclose than by determining the controversy without their aid. Such matters are exceptions to the general duty to give evidence. 3 Wig. Ev., *ss*. 2192, 2193. As the questions which the witnesses have refused to answer are not privileged, the plaintiffs are as matter of law entitled to the evidence asked for. But while it is the duty of witnesses to furnish all the facts in their possession which are not privileged, the performance of that duty should not be made any more unpleasant or arduous than is necessary. There seems to be considerable doubt whether the question as to the price paid for the interest in the John B. Varick Company will be material at the

trial; and as the witness does not wish to make the same public, should he volunteer to attend the hearing before the referees the question should not be insisted upon in the deposition.

*The motions are granted.*

All concurred.