STEPHEN BROADBENT and others, *vs.* THE STATE, at the suggestion of the Lottery Commissioner.

The 20th article of the bill of rights confides to the discretion of the legislature the exercise of the power to compel a party to give evidence against himself, but a just regard for the liberties of the citizen should at all times induce the most cautious and jealous exercise of it by the legislature.

*Broadbent, et al., vs. The State.*

The courts of justice should anxiously and narrowly watch the exercise of this power, and never, under any pretence, extend it beyond the limits to which the strictest interpretation of the language of the legislature confines it, in the particular case.

A bill of discovery was filed to procure evidence in aid of suits at law, instituted under the *third* section of the act of 1846, ch. 109, contained interrogatories which, if answered, might subject the defendants to a criminal prosecution, under the 4th section of that act. HELD, that they were not bound to answer *such* interrogatories.

The 2nd section of the act of 1847, ch. 284, only compels the party to answer on oath any bill of discovery filed against him "*in the premises,*" which are the things specified in the *third* section of the act of 1846, ch. 109, among which is not the employment of *colored persons* to issue lottery tickets, which is an offence punished by the 4th section of that act.

Where there are separate proceedings before a justice of the peace against several parties, for a violation of the third section of the act of 1846, ch. 103, a *joint* bill of discovery cannot be filed against them, and such joinder is matter of *substance* and not of *form*, and is fatal on demurrer.

The 4th section of the 7th article of the constitution clearly contemplates the performance, by the commissioner of lotteries therein referred to, of the duties previously discharged by the lottery commissioners, and he can therefore file a bill for discovery under the acts of 1846, ch. 109, and 1847, ch. 284, there is nothing in those acts which has expired, or which is repugnant to the constitution, and they are protected by the 3rd article of the bill of rights.

APPEAL from the Circuit Court for Baltimore city.

The bill in this case is a bill of discovery filed in the name of the State, at the instance of Lemuel Roberts, the lottery commissioner, against the appellants, to procure evidence in aid of suits at law, which had been instituted against the defendants, under the acts of 1846, ch. 109, and 1854, ch. 138. Its allegations are fully stated in the opinion of this court. The six interrogatories propounded to the defendants are in substance as follows:

1st. Whether the exhibit referred to in the bill was printed at their instance?

2nd. What is the meaning and purport of the same, and of every part thereof?

3rd. Does it not set forth the terms and conditions of insurances offered to be effected by them of numbers of lottery

tickets in the Maryland consolidated lotteries, or some other, and if so, what other?

4th. Were not one or more persons, on the 21st of October 1854, employed by or acting for them, at their instance, or with their knowledge and consent, in the city of Baltimore, to effect insurance of lottery tickets, or the numbers or some of the numbers thereof, or do the things set forth or contemplated by said exhibit? and what the names of such persons are? and where they carried on said business on that day? and where they now reside?

5th. Whether said persons, or any of them, effected insurances on said 21st of October 1854, of lottery tickets, or the numbers or any of the numbers thereof? and who such person or persons were, and what tickets or numbers of lottery tickets they insured on that day?

6th. Whether any of the persons employed by or acting for them, at their instance, or with their knowledge on that day, were colored persons? and if so, what are the names of such colored person or persons? and what insurances were effected on that day by such person or persons?

To this bill the defendants filed a demurrer upon the grounds, 1st, that by answering it, they might subject themselves to pains, penalties and forfeitures, and 2nd, because the State has no right to file a *joint bill* of discovery against them.

This demurrer the court (KREBS, J.,) overruled, and required the defendants to answer, and from the order to this effect they appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Robert J. Brent* and *Charles H. Pitts* for the appellants, argued:

1st. This bill of discovery is alone in aid of a suit at law, and can only enforce discovery for the purposes of that suit, and beyond that purpose, it is a fishing bill. *Story's Eq. Pl.*, *secs.* 321, 325. 2 *Story's Eq.*, *sec.* 1497. What is the cause of

action in the suits at law, in respect to which discovery is wanted? This is shown in the bill to be illegal insurances effected on the 21st of October 1854, by the defendants in the city of Baltimore, through some person or persons employed by them, or acting for them in the premises at their instance, &c. The complaint, therefore, is not that defendants personally insured on that day, but they did it by some person or persons. The 4th, 5th and 6th interrogatories require a discovery of all the persons and their names so employed by them, and whether such persons, or any of them, were colored persons? Therefore it is plain that the principal object of the bill is to enforce discovery of the agents who effected insurances for defendants, and it is charged that one or more of them were colored persons, and the names of all such persons are called for. Should it, therefore, turn out that all were colored, the defendants, if they answer at all, must say so. If part are colored, the defendants must name them in their answer. Framed as this bill is, they must, if they answer fully, expose themselves to the indictment provided in the 4th sec. of the act of 1846, ch. 109, and by the act of 1847, ch. 284. Conceding, therefore, that the defendants are bound to expose themselves to the penalties of the 3rd section, which are to be recovered in the form of a civil action, as ruled in *Day vs. State*, 7 *Gill*, 325, yet they are not bound, even under the rigorous doctrine of that decision, to expose themselves under this bill to criminal prosecution, under the 4th section. In *Day's case*, no such enquiry or discovery was made as to the agents, or their being colored persons, but it was simply whether Day had not himself illegally insured, thereby exposing him only to the action of debt, and not to the criminal and indictable offence created in the 4th section, which is still in force and not repealed. The rule then applies, that though the bill may be in aid of a civil suit, yet its answer would involve a liability to an indictment, if the facts are as charged. *Wigram on Discovery*, 61, 150, 195. *Story's Eq.*, sec. 1494, *note* 2. *Glynn vs. Houston*, 1 *Keen*, 329. *Singery vs. Attorney General*, 2 *H. & J.*, 497. *Wolf*

*vs. Wolf*, 2 *H. & G.*, 387.   If this bill had only sought dis-
covery as to the single fact, whether they insured by white
agents, and called for their names, it would have avoided this
objection, but here the test is, that we cannot answer without
giving the names of all the agents, one or more of whom are
expressly charged to be colored; we cannot answer and give
the names of white agents only, for that would not be a full
answer.   It is no answer to our objection to say, that the dis-
covery is only sought to recover a penalty in a civil action of
debt, and that such a discovery was allowed in *State vs. Day.*
Here, it is true, the State only claims the pecuniary fine by
an action of debt.   But the frame and scope of this bill goes
upon a state of facts not only subjecting the parties to the
action of debt, but to an indictment hereafter, if they should
discover colored agents in their answers to the interrogatories,
or if they should furnish even a link to connect them with a
*res gesta* averred to have been carried on by colored agents,
and therefore indictable.   Surely the State cannot make a
party expose himself to a future indictment, merely to enable
her now to maintain "a civil action."   2 *Younge & Jervis*,
183, *Maccallum vs. Turton.*   1 *Atk.*, 539, *Harrison vs. South-
cote*, 2 *H. & G.*, 389, *Wolf vs. Wolf.*   *Wigram on Discovery*,
62, 63.   This case, therefore, differs broadly from *State vs.
Day.*   The 20th article of the bill of rights (copied from the
old bill of rights,) declares, that "no man ought to be com-
pelled to give evidence against himself in a court of common
law, or in any other court, but in such cases as have been
usually practised in this State, or may hereafter be directed
by the legislature."   And the 42nd article declares, that "this
enumeration of rights shall not be construed to impair or deny
others retained by the people."   From this it is manifest there
was a residuum of natural rights never intended to be surren-
dered to the legislature.   Now it will be observed, that the
20th article only applies to the cases where a man is called on
to testify "against him in a court of common law, or any
other court," and conceding that the legislature may direct in
what cases he shall be a witness against himself, yet the ques-

tion remains, whether the legislature can direct him to testify against himself in a civil case, where his testimony would involve a liability to a criminal charge to be afterwards instituted in some other court? It is well known, that the exemption of the citizen from all obligations to criminate himself in any case, was based on the broadest principles of the common law, and solemnly reaffirmed by *magna charta.* Has the legislature of Maryland overthrown this great national right, by the act of 1846, for the contemptible and petty purpose of breaking up lottery policies? Assuming their power to exercise such despotic powers of government, the court will, at least, require a clear and positive manifestation of the legislative intention to do so. So sacred a natural right can never be wrested from a free citizen, upon construction or implication. There are many cases of natural right in which the power of the legislature may be well questioned, without any formal recognition of those rights in the constitution. 3 *Story's Com. on the Cons., sec.* 1393. And it is to this class of non-enumerated rights that the 42nd article of our bill of rights points, as not surrendered by the people. Surely no man can say, that the people ever meant to delegate to their legislature the powers of absolute despotism—the power of declaring what should be criminal, and the power to make a man convict himself of any thing that the legislature might declare to be a crime. Give this power to the legislature, and there is not a vestige of liberty left to the citizen. Give it to the legislature, and you trample down the great natural rights of persons secured by *magna charta* itself, and you concede to the legislature of Maryland a power not possessed by the Parliament of England. Give it to the legislature, and you pass by the 42nd article of the bill of rights as idle and unmeaning; at the same time you pervert the spirit of the 3rd article, securing to all citizens "the common law of England, and the trial by jury, according to the course of that law," and also disregard the 4th article, which imposes restraints on the legislative power, and inculcates resistance to all acts "of arbitrary power and oppression." And above

all, you strike down the letter and spirit of the 19th article, which secures the jury trial to every criminal, and the right to be confronted with his witnesses : for it would be a farce to give the form of a jury trial, when the State had already compelled the prisoner to record his confession of the criminal offence, and the jury could not fail to convict upon this legalized, though extorted confession of crime. With these great and fundamental principles in view, let us approach the construction of these acts of Assembly. The act of 1846, ch. 109, sec. 3, inflicts a pecuniary penalty of $50, to be re-covered in an action of debt. Sec. 4 makes it indictable to employ negroes or colored agents, as charged in this bill, but the act of 1846 does not give the right of discovery on oath. The act of 1847, ch. 284, changes the punishment inflicted by that of 1846, ch. 109, sec. 4, to a fine of $30 and costs, and imprisonment not less than sixty days, nor more than six months, and then declares, that a recovery and payment of the pecuniary penalties, shall bar the criminal prosecution based on the same act. Now it may be said, that the State could not prosecute by indictment on the discovery of these parties, because if this gives the discovery as prayed, the penalty will be recovered, and then, by payment, they can bar the indictment. But *non constat*, that the justice will enter judgment for the penalty, even though the parties confess the facts in their answer. Nor can this court assume that the parties are able or will pay the fine, so as to bar the indictment. A rich man might pay and bar the prosecution, while a poor man, unable to pay, would still be liable to indictment on his own extorted answer. The 2nd sec. of the act of 1847, ch. 284, gives the right to file the bill of discovery in any proceeding, to recover the fine imposed by the original act of 1846, ch. 109 ; but it does not follow, except by loose construction, that the legislature meant to allow the discovery where the proceeding, though for a recovery of the fine, also involved, as here, an indictable offence. The legislature have not said, that on an indictment for employing colored persons, the prisoner should answer a bill of discovery ; and where

Broadbent, *et al.*, *vs.* The State.

they have not said so directly, can you hold that they have
said it indirectly? The true and rational construction, there-
fore, is, to authorize the bill of discovery in those cases where
the facts charged exposed the party only to the pecuniary
penalty, by way of action of debt, and not to cases where
they involve an indictable offence, as well as the action of
debt. The act of 1854, ch. 138, amends the act of 1846, ch.
109, sec. 3, so as to make the pecuniary penalty for selling
lottery policies only $5, but says nothing of the bill of dis-
covery. By the letter of the act authorizing the discovery,
the right to demand it is conferred in those cases when the
penalty of $50, imposed by the original act, is sought to be
recovered, and this suit, therefore, is not within the letter of
the act of 1847, conferring the right to discovery. It is only
by implication or construction that you can apply the bill of
discovery to a case like this, and we have shown that no such
implication should be made for the purpose of exposing the
party to a criminal prosecution. Again, it is manifest, from
the facts stated in the bill, and the purpose charged, that the
answer of the defendants, if they admit the facts, would con-
vict them of a conspiracy. A conspiracy or combination be-
tween the three to do an illegal act, is, as such, indictable.
*State vs. Buchanan*, 5 *H. & J.*, 350.

2nd. Again, this privilege of discovery was allowed to the
lottery commissioners, and the new constitution has created a
new officer, and *defines his powers and duties.* It has not
given him the powers of the three commissioners, but only
the enumerated powers. *Const.*, *art.* 7, *sec.* 4. The act of
1852, ch. 113, which attempts to confer on the single lottery
commissioner all the powers, &c., is therefore void, as adding
powers not conferred on that officer by the constitution, but
impliedly denied by the enumeration of what he shall do. 2
*English's Rep.*, 172, *Gibson vs. Emerson.* 8 *B. Monroe*, 648,
*Page vs. Hardin.* 5 *Md. Rep.*, 347, *State vs. Mace.*

3rd. There are several actions at law against each of the
three defendants. The discovery should be separately prayed
for, and the demurrer lies in this case for a misjoinder of de-

fendants. Certainly, if the causes of action are separate at law, the discovery cannot be asked for jointly. *Story's Eq. Pl.*, secs. 270, 271, 277, 278, *and the notes.*

*J. Mason Campbell* and *John Nelson* for the appellee.

This bill was filed under the authority of the act of 1847, ch. 284, sec. 2, which is a supplement to that of 1846, ch. 109, and is in these words: "That upon any proceeding for the recovery of any fine imposed by the act to which this is a supplement, the party from whom it is sought to be discovered shall be bound to answer on oath any bill of discovery which may be filed against him by the commissioners of lotteries in the name of the State, either in the high court of chancery, or in any county court as a court of equity." The present bill was filed within the terms of the act of 1847, in a proceeding to recover a fine imposed by the act of 1846, and that the act of 1847 is constitutional is not an open question. 7 *Gill*, 321, *Day vs. The State.* 5 *Md. Rep.*, 349, *State vs. Mace.*

It is said the present lottery commissioner under the new constitution has no power to file this bill. This objection is not tenable, for the 4th section of the 7th article of the constitution confers upon the lottery commissioner the same powers that the old lottery commissioners had, for it requires him "to give such bond for the faithful performance of *his duties* as is now given by the *lottery commissioners.*" This section does not profess to repeal all the laws regulating the duties of commissioners of lotteries; but on the contrary, contemplates that the commissioner should look to the existing laws for the purpose of ascertaining what those duties are. And besides this, the 3rd article of the bill of rights secures to the people of the State the benefit of all acts not repealed by the constitution.

The only other question is in regard to the *character of the bill.* It unquestionably presents inquiries which the defendants are bound to answer apart from the objection taken by their demurrer. But can there be a doubt that they are bound

to answer *all* these questions. The 20th section of the bill of rights expressly excepts cases in which the legislature may direct the parties to answer, and this article is precisely the same as that of the old bill of rights, which was construed by the Court of Appeals in *Day vs. The State*, which, in all respects, is similar to the present case. The party must answer the interrogatories not involving an indictment, even if he be not required to answer the others. *Story's Eq. Pl.*, secs. 578, 578, *(a,)* 588. But the 1st section of the act of 1847, ch. 284, answers all the objections urged against this bill or any of the interrogatories, by enacting that the recovery and payment of the penalties shall be a bar to *any indictment* under this act for the same offence. It in effect says that the parties shall answer, but that their answers shall not be used as evidence against them on an indictment. As to the objection of the joinder of the defendants, it is answered by the 6th section of the act of 1846, ch. 109.

LE GRAND, C. J., delivered the opinion of this court.

The State filed its bill for discovery in the circuit court for Baltimore city, alleging that it had instituted, under the acts of 1846, chapter 109, and 1854, chapter 138, before a justice of the peace, three actions of debt against Stephen Broadbent, three actions against Scotti Broadbent, and three against Joseph Beard, to recover the penalties imposed by the 3rd section of the act of 1846; and that each of said actions so pending are brought for the illegal insurance of lottery tickets, and that such illegal insurances were effected on the 21st October 1851, by the defendants in the city of Baltimore, through certain person their agents, one or more of whom were *colored* persons. The bill then avers that the appellants have caused to be printed and published a certain handbill filed with the bill of discovery, the true meaning of which is unknown to the appellee. It then asks that the appellants shall answer and make discovery of certain things and matters in regard to which they are specifically interrogated. To this

bill the defendants demurred. The circuit court overruled the demurrer, from which order this appeal is taken.

The third section of the act of 1846, chapter 109, is in these words: "That all insuring of lottery tickets, or numbers or certificates of numbers of lottery tickets, either foreign or domestic, is absolutely prohibited in this State; and any person, directly or indirectly, making or offering, or agreeing to make such insurance or insuring, or receiving any consideration for insuring for or against the drawing of any ticket or tickets in any lottery, whether authorized by law or not, or receiving any money, goods or thing in action, in consideration of any agreements to repay any sum or sums of money, or to deliver the same, or any goods or thing in action, if any ticket or tickets in any lottery whatever shall prove fortunate or unfortunate, or shall be drawn or not drawn, on any particular day, or in any particular order or otherwise howsoever, or promising or agreeing to pay any sum of money, or to deliver any goods or thing in action, or to do, or forbear to do, anything for the benefit of any other person or persons, with or without consideration, upon any event or contingency dependent upon the drawing of any ticket or tickets, or number or numbers of any ticket or tickets in any lottery whatsoever, shall, for each of said offences, be punishable as is provided for by the first section of this act in regard to the offences there described." The first section provides a fine of fifty dollars for each offence, which, by the act of 1854, chapter 138, section 1, is reduced to five dollars, to "be recovered before any justice of the peace, by action of debt in the name of the State," &c.

The 4th section of the act of 1846, chapter 109, provides, "that the *employment*, by any licensed vendor or vendors, or *any other person*, of any *negro* or *colored* person to do any of the matters or things prohibited by this act, or in any way to assist in doing them, shall be punished, upon indictment and conviction thereof, by a fine of not less than fifty, nor more than two hundred and fifty dollars, and by imprisonment for not less than twenty days, nor more than six months."

The second section of the act of 1847, chapter 284, provides: "That upon any proceeding for the recovery of any fine imposed by the act to which this is a supplement, the party from whom it is sought to be recovered shall be bound to answer on oath any bill of discovery which may be filed against him in the premises by the commissioners of lotteries, in the name of the State, either in the high court of chancery or in any county court as a court of equity."

The bill in this case calls upon the defendants to answer six interrogatories. We are of opinion they ought not to be compelled to answer some of them. The bill was filed to procure evidence in aid of suits at law instituted under the *third* section of the act of 1846, chapter 109. That section does not make the *employment*, as does the 4th section, of colored persons a crime. Some of the questions ask of the defendants to make such disclosures as would, (if they have employed negroes or colored persons,) subject them to a criminal prosecution.

The 20th section of the existing bill of rights of Maryland, is precisely the same as the 19th section of the bill of rights of 1776, and the latter, in connection with the second section of the act of 1847, chapter 284, has received a judicial interpretation in the case of *Day vs. The State*, 7 *Gill*, 321. Both articles read as follows: "That no man ought to be compelled to give evidence against himself in a court of common law, or in any other court, but in such cases as have been usually practised in this State, *or may hereafter be directed by the legislature.*" The concluding words of the article clearly confide to the discretion of the legislative branch of the government the exercise of the power to compel a party to give evidence against himself, and so it was expressly holden by the Court of Appeals in the case to which we have referred. But, although it is competent to the legislature to alter the rules of evidence so as to compel a party to give testimony against himself, it is, nevertheless, a power of such transcendent and overwhelming importance, that a just regard for the liberties of the citizen should, at all times, induce the most cautious

and jealous exercise of it by the legislature. And especially should courts of justice anxiously and narrowly watch it; and never, under any pretence whatever, extend it beyond the limits to which the strictest interpretation of the language of the legislature confines it in the particular case. In the case before us, the parties are not being proceeded against for the violation of the 4th section of the act of 1846, but of the 3rd section. They ought not, therefore, to be compelled to answer any question which is not essential to the ascertainment of the fact, whether or not they have violated the provisions of the *third* section of the act. So far as liability under that section is concerned, the color of the agents through whom the insuring, &c., may have been done, is a wholly immaterial inquiry. It is the 4th section which makes the *employment* of negroes a crime, punishable by fine and imprisonment. In the suits pending before the justice, the defendants are not charged with a violation of the 4th section, and we, therefore, can see no reason why they should be compelled to furnish evidence which would, in regard to a different matter, to wit, *the employment of negroes*, subject them to a criminal prosecution. The 2nd section of the act of 1847, chapter 284, only compels the party to answer on oath any bill of discovery which may be filed against him "*in the premises.*" The premises here are the things specified in the third section of the act of 1846, among which is not to be found the employment, *eo nomine*, of negroes or colored persons. Independently of the act of 1847, it could not and has not been contended, that the defendants could be compelled to answer the matters inquired of in this bill of discovery, and, for the reasons we have given, we are of opinion the defendants ought not to be compelled to answer the interrogatories to which we have referred, even were there no other objection to the bill. We think the joinder of the defendants is a fatal defect. The proceedings before the justice are separate. The cases have no necessary connection with each other, and the defendants in them ought not to be compelled to defend jointly, or to have their rights in a court of equity mingled with those of

other parties, and for that reason the bill is bad on demurrer. But, it is said, this defect, if one, is cured by the sixth section of the act of 1846, which provides : "That no proceedings in any court, or before any justice, by indictment, action of debt, bill in equity, or otherwise instituted, upon the suggestion of the commissioners of lotteries, shall be quashed, set aside, dismissed or delayed for any defect or (in) form whatsoever." There might be a question, whether this section has any bearing on the 2nd section of the act of 1847, chapter 284, but conceding that it has, on the principle that matters in *pari materia* shall be construed together, yet it cannot avail the State in this case, for we regard the joinder of the defendants as a matter of *substance*, and not of *form*, to which the section was evidently, in any event, designed exclusively to apply.

These views dispose of this case, but inasmuch as there was another question of practical importance presented and discussed, we deem it proper to dispose of it also. It was contended, on the part of the defendants, that under the present constitution of Maryland, the lottery commissioner has no right to institute such a proceeding as that now under consideration. In this view we do not concur. We think the 4th section of the 7th article of the constitution clearly contemplates the performance, by the commissioner therein referred to, of the duties previously discharged by the two lottery commissioners. He is required to give bond "for the faithful performance of his duties as is now (then) given by the lottery commissioners." The 5th section of the same article only assigns to him another and additional duty, and in no wise confines his power to the mere making of a contract. The 3rd section of the bill of rights, however, is a conclusive answer to the objection. It distinctly declares to be in force all laws which were so on the first Monday of November 1850, except such as may thereafter have expired, or be repugnant to the constitution. There is nothing in the acts of 1846, or 1847, relating to the subject before us, which has expired, or which is repugnant to the constitution. The constitution ex-

pressly recognizes the continuance, for a specified term, of the lottery system, and in the absence of some express declaration to the contrary, we must understand the language of the constitution to mean the system in force at the time of its adoption. The objection can find no support from the decision of the case of *Mace vs. The State,* 5 *Md. Rep.,* 348. The question of the jurisdiction of the Court of Common Pleas, considered in that case, was determined in reference to the language of the 10th and 11th sections of the 4th article of the constitution, which, after conferring on the Superior Court certain powers, proceeds to say, that in addition to the enumerated powers, it shall have jurisdiction in *"all other civil cases which have not been heretofore assigned to the Court of Common Pleas."* This language undoubtedly makes the latter court one of limited and specified jurisdiction, and it was on this ground the court rested its decision.

*Order reversed and bill dismissed with costs.*