## Case No. 14,966.

UNITED STATES v. DISTILLERY NO.
TWENTY-EIGHT et al.

[6 Biss. 483; [1] 21 Int. Rev. Rec. 366; 8 Chi.
Leg. News, 57; 2 Cent. Law J. 749.]

District Court, D. Indiana. Nov. 4, 1875.

INTERNAL REVENUE — DISTILLERS — BOOKS — JURY
TRIAL—PENALTY—EX POST FACTO LAW.

1. The act of June 22, 1874 [18 Stat. 486],
does not apply exclusively to cases arising under
the custom revenue laws, but applies as well to
cases arising under the internal revenue laws.

2. The fifth section of the act of June 22,
1874, is constitutional, and does not violate articles 4, 5 and 7, of the amendments to the constitution.

[Cited in Boyd v. U. S., 116 U. S. 616, 6
Sup. Ct. 535.]

3. This is a proceeding against the distillery
and not against the claimants; any statements
made by them as witnesses in the proceeding
against the distillery could not be used against
them in any subsequent criminal prosecution.

4. The court had the power to make the order
requiring the production of the books and papers, and to enforce it.

5. When the issues are made up, the claimants will have the constitutional right to demand a jury trial.

6. The penalty for not complying with the
order to produce books is that the allegations in
the motion shall be taken as confessed.

7. The objection that the act of 1874 is an ex
post facto law considered.

Informations were filed in two cases under the internal revenue laws against distillery No. twenty-eight, and certain rectifying houses and other property. Gordon B. and John W. Bingham intervened as claimants and the causes were consolidated. Subsequently, upon the written motion of the district attorney, under the fifth section of the act of June 22, 1874, an order was entered against the claimants to produce in court certain business books and papers relating to their business as distillers, rectifiers and wholesale liquor dealers, on a day and hour certain, subject to the examination of the district attorney, under the direction of the court. On the day named claimants appeared by counsel, and moved that this order be vacated for the following reasons: (1) That the act of June 22, 1874, applies exclusively to cases arising under the custom revenue laws, and not at all to proceedings under the internal revenue laws. (2) That the books and papers ordered to be produced are not described with sufficient particularity. (3) That the fifth section of the act of June 22, 1874, is unconstitutional in this, that it violates articles 4, 5 and 7 of the amendments to the constitution.

Nelson Trusler, Dist. Atty., Charles L. Holstein and Thomas M. Browne, for the United States.

James M. Shackelford and Charles Denby, for claimants.

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

GRESHAM, District Judge. The section under which the order was entered against the claimants reads as follows: "That in all suits and proceedings other than criminal, arising under any of the revenue laws of the United States, the attorney representing the government, whenever, in his belief, any business book, invoice, or paper, belonging to or under the control of the defendant or claimant, will tend to prove any allegation made by the United States, may make a written motion particularly describing such book, invoice, or paper, and setting forth the allegation which he expects to prove; and thereupon the court in which the suit or proceeding is pending may, at its discretion, issue a notice to the defendant or claimant to produce such book, invoice, or paper in court, at a day and hour to be specified in said notice, which, together with a copy of said motion, shall be served formally on the defendant or claimant by the United States marshal by delivering to him a certified copy thereof, or otherwise serving the same as original notices of suit in the same court are served; and if the defendant or claimant shall fail or refuse to produce such book, invoice, or paper, in obedience to such notice, the allegations stated in said motion shall be taken as confessed, unless his failure or refusal to produce the same shall be explained to the satisfaction of the court. And if produced, the said attorney shall be permitted, under the direction of the court, to make examination, (at which examination the defendant or claimant, or his agent, may be present,) of such entries in said book, invoice, or papers, as relate to or tend to prove the allegation aforesaid, and may offer the same in evidence on behalf of the United States. But the owner of the said books and papers, his agent or attorney, shall have subject to the order of the court, the custody of them, except pending their examination in court as aforesaid."

Language more general could hardly have been employed. It provides for the production of books, papers, etc., "in all suits and proceedings other than criminal, arising under any of the revenue laws of the United States."

It is true the act is entitled "An act to amend the custom revenue laws and to repeal moieties," and that, with the exception of the fifth section, its provisions relate solely to the customs-revenue. But it also appears that the provisions of the former acts, repealed by the act of 1874, also related exclusively to the customs-revenue. Why, then, did not congress expressly limit the operation of this act, providing for the production of business books and papers to cases arising under the customs-revenue laws, as it did the provisions of the several acts referred to in this act and repealed by it? Clearly for the reason that in all suits other than criminal, arising under any of

the revenue laws of the United States, congress designed that the court might require the production of any business book and paper belonging to or under the control of the defendant or claimant.

Besides, it is seldom that the title of an act of congress is resorted to as an aid in its construction. The title neither extends nor restrains any positive provisions contained in the body of the act. It is well known that congress often embodies in a single act incongruous provisions, having no reference to the matters specified in the title. Hadden v. Collector, etc., 5 Wall. [72 U. S.] 107.

The second objection made to producing the business books, papers, etc., is that the same were not described with sufficient particularity.

The act must receive a reasonable construction. Such a decree of particularity as was insisted upon by counsel for claimants would render the fifth section practically nugatory. The district attorney cannot be required in his motion to describe the business books as journal A or B, or ledger A or B, for he may not know what particular books the claimants have.

The description of the books and papers in the written motion, and the order of the court is, substantially· Certain day books, journals, cash books, ledgers, blotter-books, blotters, invoices, dray-tickets, etc., kept, received, and taken by the claimants in their business as distillers rectifiers and wholesale liquor dealers, between certain dates named, and since the 22d day of June, 1874, showing the amount of spirits produced, received, removed, and sold by them during the time named. The claimants were sufficiently advised by this description what books and papers were meant. No greater certainty of description was required to satisfy the statute. U. S v. Three Tons of Coal [Case No. 16,515]; Myer v. Becker [Id. 1,208].

In considering the constitutionality of the fifth section of the act of June 22, 1874, it is necessary to determine the real character of the case at bar.

The charges made in the libel are against the property and not against the claimants. It is the distillery and other property proceeded against that are treated as the offenders. The claimants, strictly speaking, are not parties to the proceeding. They are here of their own motion, and not on the process of the court. The judgment must be for or against the property libeled, not for or against the claimants. A forfeiture of the property does not convict the claimants. This proceeding is entirely independent of any criminal prosecutions which have been commenced, or which may hereafter be commenced against them The books and papers, which may or may not, when produced, inculpate the property, can only be used in evidence in this action. After being thus

used they go back into the possession of the claimants.

The question, therefore, of compelling a person to accuse himself or to testify against himself in a criminal case is not before the court. Even if the act of 1874 were not in existence, the claimants might be compelled by a subpœna duces tecum, to bring in the books and papers called for in the order of the court; and I can see no reason why they might not also be compelled to testify concerning all the allegations of the libel. Any statements thus made by them as witnesses in the proceeding against the distillery and other property could not be used against them in any subsequent criminal prosecution.

The act of February 25, 1868 [15 Stat. 37], section 860, Rev. St., provides that "no discovery or evidence obtained from the party or witness, by reason of a judicial proceeding * * * shall be given in evidence or in any manner used against him, or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture."

It was said in argument that under this statute the books and papers, even if produced, could not be used in evidence on the trial of this cause

The act of 1874, expressly provides that the books and papers may be thus used in evidence. This is the last expression of the legislative will. So far as the two acts are inconsistent or repugnant, the act of 1868 is repealed. The claimants are not justified by article five of the amendments to the constitution in refusing to produce their books and papers to be used in evidence. U. S. v. Mason [Case No. 15,735]; U. S. v. Three Tons of Coal [supra].

The claimants next attempted to shelter themselves under the provision in article four, of the amendments to the constitution which secures the people in their persons, papers and effects, against unreasonable searches and seizures.

Congress is empowered by the constitution "to levy and collect taxes, imports and excises," provided the laws are uniform in their operation. The mode and manner of exercising this power is left to the discretion of congress. Under the exercise of that power congress has provided the internal revenue system. By that system the government raises the principal portion of its revenue. The tax on the production and sale of spirits is a material source of revenue. The government has, therefore, practically assumed control of the manufacture and sale of spirits. It has adopted regulations for the government of distillers, rectifiers, and wholesale dealers, with fines, penalties, and forfeitures for their violation. They are required to keep books in which they are to enter daily all their business transactions with the utmost particularity. These books are at all times open to the inspection of the proper

revenue officers, and are popularly known as government books. If properly kept they will show the exact amount of spirits produced, received, and removed on any given day. If so kept, they will correspond with their business books, and this correspondence ought to exist. No one can engage in the manufacture and sa'e of spirits without the consent of the government. That consent is obtained on certain terms and conditions. No one can be allowed to say that, as a distiller, rectifier, or wholesale liquor dealer, he has kept a private record of his transactions. His books and entries are quasi public books and entries. The government has a right to see any record kept by him of his business. This right has been exercised by the government since its organization. The first and subsequent congresses have enacted such laws. It is too late to question the validity of such statutes. Experience has shown that without severe and even inquisitorial regulations the government cannot successfully collect the tax levied upon the production and sale of spirits, and the necessities of the government justify the existence and rigid enforcement of such regulations.

The order of the court complained of by the claimants authorizes neither search nor seizure. It calls on the claimants to produce certain books and papers relating to their business as distillers, rectifiers, and wholesale liquor dealers. If their business books and papers are not produced the allegations of the libel are taken as confessed.

The claimants were equally unsuccessful in invoking the protection of article seven of the amendments to the constitution. That article provides that "in suits at common law, when the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." And it has been settled that a proceeding in rem under the internal revenue laws is a suit at common law within the meaning of that article. The Sarah, 8 Wheat. [21 U. S.] 391.

It is clear then that when the issues in this proceeding are made, and the case is ready for trial, the claimants will have a constitutional right to demand a jury.

But they must first submit to and comply with all reasonable and proper rules and orders of the court entered against them in making up the issues and preparing the case for final trial.

As already stated, the books and records kept by the claimants are quasi public records. If their government books were kept as the law required them to be kept, their business books will make the same showing as the government books. And if this correspondence exists, the production of their business books and papers will not harm the claimants. If their government books were not so kept, and their business books and papers contain evidence which will tend to prove the allegations in the libel, there is justice in the demand of the government for their production.

The act of 1874, authorized the court to make the order in controversy. That act, and others of the same nature, have not only been held constitutional, but reasonable and proper, in view of the object sought to be accomplished. The statute authorizing the order for the production of books and papers also fixes the penalty for disobedience of that order—the allegations in the motion shall be taken as confessed.

If congress had not seen proper to prescribe the penalty or punishment for disobedience of the order, it can hardly be doubted that the courts, in the exercise of a sound discretion, would have been authorized to enforce compliance either by fine or imprisonment, or both. In this case the statute has fixed the penalty, and the court can inflict no other. If the claimants refuse to comply with the order of the court they are in contempt of its authority. That question is not triable by a jury. The contempt can be purged only by a compliance with the court's order. The constitutional right of the claimants to a trial by jury will not shield them from punishment for disobedience of the order of the court.

Whenever in the progress of a proceeding a party acts contumaciously by disobeying a lawful order entered against him, that proceeding, so far as he can claim any advantage under it, is at once arrested, and goes no further until the contempt is purged. Where the United States courts are not limited by statute, their power to enforce obedience to their orders by punishing for contempt is discretionary. The object to be accomplished by the exercise of this power may be punitive in its character, or it may be at once punitive and remedial, according to the given case.

In the case of Texas v. White [reported, sub nom. In re Chiles, 22 Wall. (89 U. S.) 157], in the supreme court of the United States, Justice Miller used this language: "The exercise of this power has a twofold aspect, namely: First, the proper punishment of the guilty party for his disrespect of the authority of the court or its order; and second, to compel his performance of some act or duty required of him by the court, which he refuses to perform. Stimpson v. Putnam, 41 Vt. 238. In the former case the court must judge for itself the nature and extent of the punishment with reference to the gravity of the offense. In the latter case the party refusing to obey should be fined and imprisoned until he performs the act required of him, or shows that it is not in his power to do it." Also see Bish. Cr. Law (3d Ed.) §§ 232–259, inclusive.

The first ten articles of the amendments to the constitution were proposed by the first congress of the United States at its

first session on the 25th day of September, 1789. At the same session, and about the same time, the act commonly called the judiciary act was passed. Section fifteen of that act (section 724, p. 137, Rev. St.) is as follows: "In the trial of actions at law, the courts of the United States may, on motion and due notice thereof being given, to require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery; and if a plaintiff shall fail to comply with such order, to produce books or writings, it shall be lawful for the courts respectively, on motion, to give the like judgment for the defendant as in cases of non-suit; and if a defendant shall fail to comply with such order to produce books or writings, it shall be lawful for the courts respectively, on motion as aforesaid, to give judgment against him or her by default."

In the case of U. S. v. Twenty-Eight Packages Pins [Case No. 16,561], it was held that this statute did not apply to proceedings in rem. The contrary, however, was held by Judge Treat, of the Eastern district of Missouri, in the case of U. S. v. Four Hundred and Sixty-Nine Barrels of Spirits [Id. 15,148], in which ruling he says he is supported by the circuit judge in a well-considered opinion. This section of the judiciary act is important as a legislative construction of the seventh article of the amendments to the constitution. The very act organizing the federal courts is contemporaneous with the articles of the amendments to the constitution, whose protection was relied on by the counsel for the claimants with such seeming confidence. The act is still in force. It authorizes the courts to order the production of the books and writings of a party, and to enforce such order by summary judgment against the party failing or refusing it. The motion in the case at bar was made under the act of 1874, and not under that of 1789 [1 Stat. 73]; but the argument by which the former statute is sustained necessarily establishes the validity of the latter. The further point was made by counsel for the claimants that the fifth section of the act of June 22, 1874, was ex post facto, and, therefore null and void. In support of that position the case of U. S. v. Hughes [Case No. 15,416], was cited.

That was a case pending before the passage of the act of 1874. It was a suit to recover penalties for an alleged violation of the revenue laws, committed prior to the enactment of the law of 1874. The motion in the case involved the production of books and papers of the defendant used and kept by him prior to the act of 1874. Judge Blatchford held, that as applied to that case, the act of 1874 was ex post facto, in that it altered the legal rules of evidence

which applied prior thereto and at the time of the alleged violation. This case is expressly limited to the books, papers, etc., of the claimants, relating to their business since the act of June 22, 1874. Whether or not a statute is ex post facto, depends upon the facts of the particular case.

The court has been aided in the consideration of these questions by the labors of the counsel upon both sides, and especially by those of Mr. Holstein, the assistant district attorney.

The motion of counsel for claimants is overruled, and the order of the court requiring the production of the business books, papers, etc., will stand.