### PEOPLE v. CAHILL.

(Supreme Court, Appellate Division, Second Department. May 12, 1908.)

1. WITNESSES—PRIVILEGE OF WITNESS—CONSTITUTIONAL PROVISIONS—STATUTES —VALIDITY.

Laws 1905, p. 1849, c. 689, § 7, authorizing the state superintendent of elections to issue subpœnas returnable before him for examination on any matter within his jurisdiction, and providing that any person who shall refuse to obey the subpœna or to testify shall be guilty of a misdemeanor, and that any person who shall testify falsely on such examination shall be guilty of a felony, is not in conflict with the Constitution, providing that no person shall be compelled in any criminal case to be a witness against himself, since the statute does not take away the constitutional privilege to refuse to answer if to do so will tend to incriminate the witness.

2. SAME.

The object of the constitutional privilege that no person shall be compelled in any criminal case to be a witness against himself is to protect the witness from the danger of prosecution for a past crime committed by him which his evidence may disclose, but when there is a pardon, or a statute of limitations or of immunity, which removes the danger, the constitutional privilege cannot be invoked.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1008–1037.]

3. SAME—IMMUNITY STATUTES—OBJECT.

The principal object of immunity statutes is to give immunity to witnesses called in an investigation against any crime that may be revealed thereby, so that they may not shield themselves behind the constitutional privilege that no person shall be compelled in any criminal case to be a witness against himself, but may be required to testify, to the end that the investigation may be carried on.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1008–1037.]

4. SAME.

Pen. Code, § 41a, punishes a person who causes his name to be improperly placed on any list or register of voters or who assists another so to do. Section 41q provides that any person so offending is a competent witness against another so offending, and he may be compelled to attend and testify "on any trial, hearing or proceeding or investigation in the same manner as any other person," and "the testimony * * * shall not be used in any prosecution, * * * civil or criminal, against the person testifying, and any such person so testifying shall not thereafter be liable to indictment * * * for the offense with reference to which his testimony was given." Laws 1905, p. 1846, c. 689, requires the state superintendent of elections to investigate all matters relating to the registration of voters, and authorizes him to issue subpœnas returnable before him for examination on any matter within his jurisdiction, etc. *Held*, that a witness subpœned by the state superintendent of elections has no right to refuse to answer on the ground that his answers might tend to incriminate him, for the reason that the statute gives him immunity from

prosecution for any past crime which the testimony may disclose, and protects him from a criminal prosecution for illegal registration of which he is guilty, either as a principal or as an accomplice.

5. SAME.

Under Pen. Code, § 712, providing that the sections of the Code which declare that evidence obtained on the examination of a person shall not be received against him in a criminal proceeding do not forbid such evidence being proved against him on a charge of perjury, one under legal compulsion to testify by reason of an immunity statute may be prosecuted for perjury for giving false testimony.

6. SAME—WAIVER OF PRIVILEGE.

Where a statute does not give one the required immunity to make the giving of his testimony compulsory, the common law rules; and he has the right to claim his privilege under the Constitution, providing that no person shall be compelled in any criminal case to be a witness against himself, and, where he does not do so, he waives the privilege.

7. SAME.

The investigation before a deputy commissioner, pursuant to Laws 1905, p. 1846, c. 689, authorizing the state superintendent of elections to issue subpœnas in his name returnable before him or a deputy for examination on any matter within the jurisdiction of the superintendent, is not a criminal proceeding, though the proceeding is entitled "The People against" the name of witness subpœnaed, and the calling on the witness to testify is not illegal, the deputy being an administrative officer, and the investigation being made solely for the purpose of superintending the registration of voters.

Jenks and Miller, JJ., dissenting.

Appeal from Kings County Court.

Joseph J. Cahill was convicted of perjury, and he appeals. Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Martin W. Littleton and Luke O'Reilly, for appellant.

James A. Donnelly, for the People.

GAYNOR, J. It is the duty of the state superintendent of elections to superintend the registration of voters, and investigate all matters relating thereto, in the metropolitan election districts, Laws 1905, p. 1846, c. 689. For the purpose of such investigation he is empowered to visit and inspect any house, hotel or building, and to interrogate the owner, keeper, landlord or any inmate thereof "as to any person or persons residing or claiming to reside therein or thereat" (section 6); and for that purpose to issue subpœnas in his name and returnable before him or one of his deputies appointed for that purpose for examination on any matter within his jurisdiction; and it is provided that any person who shall refuse to obey such a subpœna or to testify on oath under it is guilty of a misdemeanor, or who shall testify falsely on such an examination is guilty of a felony (section 7). The defendant being so subpœnaed and examined before a deputy commissioner has been indicted and convicted of testifying falsely on such examination. He was examined in respect of whether he and two other men resided in the house from which they all registered in the borough of Brooklyn, that being the matter under investigation. He was lessee of the ground floor of the said house and the next floor above, and kept a saloon on the ground floor. The residence of his wife and fam-

ily was in another election district in the said borough. He testified
on the examination that the said other two men had regularly slept
and resided in the room over his saloon the requisite statutory time for
registration therefrom, and that he lived there. The indictment ac-
cuses him of testifying falsely in respect of the residence of both him-
self and the other two men, but the learned trial judge in his charge
to the jury confined the case to whether the defendant had testified
falsely in respect of the latter.

1. It is contended that the said section 7 is unconstitutional and void
for compelling persons to testify against themselves in violation of our
constitutional prohibition, state and national, that "No person shall
be compelled in any criminal case to be a witness against himself."
This contention arises out of an obvious misconception. By making
it a criminal offense for a person subpœnaed to refuse to appear and
testify, the statute does not take away his constitutional privilege to
refuse to answer if to do so might tend to incriminate him. All wit-
nesses subpœnaed to court are under some similar compulsion, but
that does not deprive them of their constitutional privilege. Indeed, it
is only to witnesses who are being required to testify that the privilege
belongs.

2. It is contended that it was error to allow what the defendant tes-
tified to on his examination before the deputy commissioner to be prov-
ed on the trial, on the ground that he was illegally coerced by the pains
and penalties of the statute to give such testimony, and that therefore
to use it on his trial was to make him witness against himself in viola-
tion of the said constitutional prohibition; as is the familiar every
day rule in respect of all confessions or statements, oral or written,
extorted from persons accused of crime by illegal duress of police
officers, magistrates or others. As it was necessary in order to prove
the charge contained in the indictment to prove what the defendant
testified to before the deputy commissioner, as a preliminary to prov-
ing that it was false, the objection, stated in other words and in its
full significance, is that a charge of perjury cannot be based upon the
falsity of the defendant's testimony before the deputy commissioner
for the reason that he was illegally compelled by the statute to give it;
for if the giving of the alleged false testimony cannot be proved it
follows that a charge of perjury cannot be based upon it.

This all rests on whether the defendant was illegally coerced to tes-
tify before the deputy commissioner—that is to say, notwithstanding
and in violation of his said constitutional privilege—and that, it is
plain, must be answered in the negative. The privilege to refuse to
answer on the ground that his answers might tend to incriminate him
did not exist in respect of the defendant's examination before the dep-
uty commissioner, for the reason that there was a statute giving him
immunity from prosecution for any past crime which his testimony
might disclose or lead to, viz., section 41q of the Penal Code. The ob-
ject of the constitutional privilege is to protect the witness from the
danger of prosecution for a past crime committed by him which his
evidence may disclose or give a clue to, but when there is a pardon,
or a statute of limitation, or of immunity, which removes that danger,

the constitutional privilege cannot be invoked for there is nothing for it to apply to, i. e., no danger to protect the witness against. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; People ex rel. Taylor v. Forbes, 143 N. Y. 219, 38 N. E. 303; Matter of Leich, 31 Misc. Rep. 671, 61 N. Y. Supp. 3; People ex rel. Lewisohn v. General Sessions, 96 App. Div. 201, 89 N. Y. Supp. 364, affirmed 179 N. Y. 594, 72 N. E. 1148. The crime in respect of which it is claimed that the defendant was compelled to witness against himself before the deputy commissioner is that of unlawful registration, which is defined in section 41a of the Penal Code. Section 41q provides that a person so offending "is a competent witness against another person so offending," and that he "may be compelled to attend and testify on any trial, hearing or proceeding or investigation in the same manner as any other person," and that "the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person testifying," and that "Any such person so testifying shall not thereafter be liable to indictment, prosecution or punishment for the offense with reference to which his testimony was given, and may plead or prove the giving of testimony accordingly, in bar of such indictment or prosecution." In the case of People v. Sharp, 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851, it was held that section 79 of the Penal Code, which is in the same words in these respects as section 49q, gave complete immunity.

The suggestion is made that literally this only gives the witness immunity against his testimony against "another person so offending," and the crime it discloses against such other person, and not against its disclosures against himself. It would be quite too much to try to read a statute intended to give immunity to witnesses as giving them immunity against something that they need no immunity against, i. e., the derelictions of others, instead of against their own derelictions.

3. The contention that the immunity did not protect the defendant for the reason that the investigation might reveal a crime of illegal registration of which the defendant was guilty, either as a principal or as an accomplice, must be deemed singular. That construction of immunity statutes would nullify their purpose, for they apply mainly to witnesses whose examination will show them to be thus implicated, instead of guilty of some crime foreign to the subject-matter of the investigation. The principal object of immunity statutes is to give immunity to witnesses called in an investigation against any crime that may be revealed thereby, so that they may not shield themselves behind constitutional privilege, but may be required to testify, to the end that the investigation may be carried on.

4. It would be a still stranger notion that because the defendant was under legal compulsion to testify before the deputy commissioner by reason of the immunity statute, he was free to testify falsely without being amenable to the penalties of perjury, which would be the case if the evidence he gave could not be given in evidence in a criminal prosecution of him for perjury in the giving of it. Out of abundance of caution it is provided by the Penal Code that such evidence may be proved in such a prosecution (section 712); but it must be manifest

that the immunity is only given for past crimes, not for future ones. It could not be for perjury committed in the examination; nor can it be construed that the general words of the immunity statute that the evidence shall not thereafter be used against the witness in any prosecution, have reference to crimes he may afterwards commit. It has reference only to past crimes by him which his testimony might disclose or lead to the discovery of.

5. If it were conceded that section 41q did not give the defendant the required immunity to make the giving of his testimony compulsory, as is contended, then his common-law rights ruled, and he had the right to claim his privilege, for it existed, whereas it could not exist if immunity existed; and not having done so he waived it. Burrell v. Montana, 194 U. S. 572, 24 Sup. Ct. 787, 48 L. Ed. 1122; In re Knickerbocker Steamboat Co. (D. C.) 139 Fed. 713; In re Consolidated Co., 80 Vt. 55, 66 Atl. 790; 1 Gr. on Ev. § 451; 3 Wigmore on Evidence, §§ 2268, 2281; 5 Wigmore on Evidence, § 2281a. It is sought to avoid this conclusion by claiming that the investigation before the deputy commissioner was a criminal proceeding against the defendant, and that therefore it was illegal for the deputy commissioner to call him as a witness at all, which would make it unlawful to use the evidence thus gotten from him in any criminal prosecution against him. It suffices that there was no criminal prosecution or examination against the defendant or any one else before the deputy commissioner. He had no power to hold one. He was an administrative officer, and the investigation he is empowered to make is solely for the purpose of superintending registration, and enabling the registration lists to be properly made up, scrutinized and revised. Too much is made of the fact that the deputy commissioner seemed to testify on the trial that he entitled the affidavit he had the defendant sign (and which is the evidence given by the defendant before him) "The People against Joseph J. Cahill. Case No. 354." It matters not how he entitled it; he could not make a criminal proceeding of his investigation by any title; but as matter of fact the affidavit is not so entitled, as appears by reference to it in evidence. Moreover, such a title is common to civil as well as to criminal proceedings.

The evidence against the defendant was ample.

The judgment should be affirmed.

Judgment of the County Court of Kings county affirmed on reargument. HOOKER and RICH, JJ., concur. JENKS, J., reads for reversal, with whom MILLER, J., concurs.

JENKS, J. I dissent. I think that this judgment should be reversed because the court admitted against the defendant and under his objections and exceptions his sworn statement or affidavit made before the deputy state superintendent of elections. I think that such ruling was error, because this statement was obtained in violation of the defendant's constitutional and statutory right not to be compelled in a criminal case to be a witness against himself. If the affidavit read in evidence came into existence in violation of such rights, then I think it was not evidence. Wigmore on Evidence, § 2183, lays down the rule:

"Self-criminating documents or other evidence obtained from an accused person may be excluded not because of the illegal nature of the search or other act by which they were obtained but because the privilege against self-crimination involves their exclusion.  Post, § 2264."

See, too, State v. Squires, 1 Tyler (Vt.) 147.  The feature in this. case is, as I have said, that this affidavit, insisted upon as evidence,. came into existence in violation of the defendant's rights.  The distinction is indicated in People v. Adams, 176 N. Y. 351–359, 68 N. E. 636, 63 L. R. A, 406, 98 Am. St. Rep. 675.  The court in that case would not notice the means whereby the books and papers were obtained, saying:  "The defendant was not sworn as a witness nor was he required to produce any books or papers."  In accord is Adams v. New York, 192 U. S. 597, 598, 24 Sup. Ct. 372, 48 L,.. Ed. 575.  The defendant was entitled to assert his privilege "if the evidence or his examination as a witness would either tend to incriminate him or disclose a link in the chain of testimony which might convict him of crime."  People v. Priori, 164 N. Y. 466, 58. N. E. 670.

The question is not affected by the fact that the state superintendent of elections is generically an administrative officer, or that the inquiry hereafter mentioned was in the interest of a proper registration.  Both the superintendent and his duly authorized deputies are by the statute clothed with extraordinary powers of visitation,. inspection, and interrogation.  There is also the power to issue subpœnas in the name of the state superintendent to investigate any matter within his jurisdiction.  Disobedience to a subpœna is a misdemeanor, and refusal to testify under oath before such officer or his authorized deputy is likewise a misdemeanor, while he and such a deputy may administer such oath, and also in the taking of any affidavit or deposition which may be necessary or be required by law or by any rule or regulation made by the superintendent in connection with his duties.  A false statement under such oath is declared a felony.  This administrative officer, then, has the power of investigation into acts which may constitute felonies by taking and requiring evidence.  Roughly speaking, he may be likened unto an examining magistrate, save that he has no power of committal.  But, on the other hand, if the affidavit used in the case at bar was evidence, it is not too much to say that he has a power beyond that of such magistrate, in that he can in effect require, under the penalty of a misdemeanor, one under investigation for a crime to make a statement under oath, which the magistrate cannot do.  Section 198 of the Code of Criminal Procedure.

First. The proceeding in which the deposition was secured was a criminal case within the purview of these constitutional safeguards. It was an investigation to ascertain whether there had been an illegal registration which might constitute a felony; for the defendant had registered as a voter, and, if he had knowingly made a false registration, he was guilty of a felony.  Thereafter he was required to attend before the deputy state superintendent by subpœna.  When he came, he was told by the deputy that his office had received some information to the effect that there were three men registered from

413 Henry street who did not reside there, of whom the defendant was one. The deputy testifies that he was investigating the suggested illegal registration of the defendant at the time this affidavit was taken, and that he entitled it "The People v. Joseph J. Cahill [the defendant]. Case 354." In Counselman v. Hitchcock, 142 U. S. 547, 562, 12 Sup. Ct. 195, 198, 35 L. Ed. 1110, it is said:

"This provision must have a broad construction in favor of the right which it was intended to secure."

And further:

"It is impossible that the meaning of the constitutional provision can only be that a person shall not be compelled to be a witness against himself in a criminal prosecution against himself. It would doubtless cover such cases; but it is not limited to them. The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime. The privilege is limited to criminal matters, but it is as broad as the mischief against which it seeks to guard."

In People ex rel. Taylor v. Forbes, 143 N. Y. 219, 228, 38 N. E. 303, the court, per O'Brien, J., after discussion of various cases, say:

"The principle established by these decisions is that no one shall be compelled in any judicial or other proceeding against himself, or upon the trial of issues between others, to disclose facts or circumstances that can be used against him as admissions tending to prove his guilt or connection with any criminal offense of which he may then or afterwards be charged, or the sources from which or the means by which evidence of its commission or of his connection with it may be obtained."

See, too, Wigmore on Evidence, § 2253.

Second. The defendant at that time should not be regarded as a mere witness, but as one under investigation for a crime. He was called by a subpœna in consequence of information that he himself had made an illegal registration. He was informed of this fact by the deputy when he obeyed the subpœna. His case was under investigation when he was called upon to make the affidavit, and, as I have said, it was entitled "The People v. Joseph Cahill Case 354" (the name of the defendant).

Third. He was compelled to make the affidavit. He was brought before the deputy by a subpœna to which disobedience was a misdemeanor. Section 7, c. 689, p. 1849, Laws 1905. If he had refused to give information, he was likewise guilty of a misdemeanor. If he had refused to make the oath to his statement, he was declared guilty of a misdemeanor. Id. In People v. Courtney, 94 N. Y. 490, the court say:

"The Constitution primarily refers to compulsion exercised through the process of the courts, or through laws acting directly upon the party, and has no reference to an indirect and argumentative pressure such as is claimed is exerted by the statute of 1869."

In People v. Sharp, 107 N. Y. 446, 14 N. E. 333, 1 Am. St. Rep. 851, the court say:

"A person who yields from the necessity of obedience cannot be said to have the power of acting by his own choice. And, where the law says he shall be compelled to attend and shall be compelled to testify, acquiescence is not election, and he is not one of whom it can be said he receives no injury from

that to which he willingly and knowingly agrees and consents. There can be no volition where there is neither power to refuse nor opportunity to elect."

Fourth. He was not afforded complete immunity by section 41q of the Penal Code. That section makes an offender a competent witness against another person. It is "the testimony so given" that cannot be used in any prosecution, and it is any such "person so testifying" who may plead the "giving of testimony" as a bar. It is to be noted that the second sentence is:

"The testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person testifying."

And the third sentence is:

"Any such person testifying shall not thereafter be liable to indictment, prosecution or punishment for the offense with reference to which his testimony was given."

There is a manifest distinction between the use of the testimony for that it excluded from use in any prosecution civil or criminal and the prosecution of the person, for that is limited to the offense as to which he testified. The question up in this case is as to the use of the testimony; and hence, if the immunity afforded by this section does extend to a person in the situation of the defendant at the time he made the sworn statement, it makes for him absolutely. If the section does not apply to such person, then it does not prevent his plea of invasion of his constitutional and statutory rights. In Counselman v. Hitchcock, supra, the court say:

"It is quite clear that legislation cannot abridge a constitutional privilege, and that it cannot replace or supply one, at least until it is so broad as to have the same extent in scope and effect."

And further:

"We are clearly of opinion that no statute which leaves the party or witness subject to prosecution after he answers the criminating question put to him can have the effect of supplanting the privilege conferred by the Constitution of the United States."

And in Taylor's Case, supra, the court say:

"It seems that in such cases nothing short of absolute immunity from prosecution can take the place of the privilege by which the law affords protection to the witness."

It is to be noted that the provision (section 712 of the Penal Code) refers explicitly to the examination of a person as a witness, and is exclusive of a statement made by one while under investigation which is directly directed, as in the case at bar, at his commission of a crime. If it were not thus limited and were applicable to this case, then one could be convicted of a crime with the help of self-incriminating evidence obtained when he was under investigation looking to his commission of another crime. It cannot be urged that the defendant by omitting to assert his rights at the time of making the affidavit waived them, although that view is sometimes advanced in other jurisdictions. People v. Sharp, 107 N. Y. 445, 14 N. E. 332, 1 Am. St. Rep. 851. Even if he could be held to a waiver, the waiver must be limited to that proceeding, and he was

not thereby precluded from taking his objection at the trial of this indictment. Wigmore on Evidence, p. 3158, and authorities cited. On the general principle here discussed, I need but refer to People ex rel. Taylor v. Forbes, supra, and Counselman v. Hitchcock, supra, disapproving People v. Kelly, 24 N. Y. 74. It seems to me, then, that the evidence sought to be introduced came into existence by violation of the constitutional and statutory provisions declarative of the maxim, "Nemo tenetur seipsum prodere," and could not be regarded as legal evidence competent against the defendant. See, too, Minnesota v. Froiseth, 16 Minn. 296 (Gil. 260). It is not an answer to these legal objections to say that the defendant need not have committed perjury, that, if he had told the truth, his statement would not have been evidence to prove his illegal registration, for the question is whether his statement, whether true or false when thus compelled from him, is competent evidence against him to prove the crime of perjury. It is urged that this conclusion means that none can be convicted of such a perjury. If this be so, then the question is whether the constitutional and statutory provisions must be nullified or modified in order that this statute of 1906 may be enforced by establishing perjury prescribed by it perforce of a compulsory swearing to a compulsory statement elicited from the suspect himself as prescribed by it. A statute which can afford such a result as was worked in this case goes far in inquisition. As I have said, even on examination before a magistrate the defendant's statement is made without oath. Section 98, Code Cr. Proc. This is not the question of a perjury assigned to an incompetent witness, as in Chamberlain v. People, 23 N. Y. 85, 80 Am. Dec. 255, and the case upon which it was decided (Van Steenbergh v. Kortz, 10 Johns. 167), but the point is whether this statement was competent evidence against the defendant on this trial.