KAREL, Respondent, vs. CONLAN, imp., Appellant.

*November 20—December 9, 1913.*

*Discovery: Examination of party before trial: Witnesses: Self-incrimination: Privilege in civil action: Contempt: Libel: Civil and criminal liability: Appeal: Appealable orders: Remanding cause for exercise of discretion.*

1. An order of the circuit court affirming an order of a court commissioner made upon the examination of a party under sec. 4096, Stats., adjudging the witness in contempt for refusing to answer certain questions, and fixing his punishment therefor, is a final order in a special proceeding and is appealable.

2. The proofs to sustain a civil action for conspiracy to publish a libel would also tend to render the defendant liable for a criminal conspiracy under sec. 4568, Stats., and for criminal libel under sec. 4569.

3. Even if it were the rule that when a witness testified under protest the information elicited could not be used against him in subsequent criminal proceedings, that rule would not furnish the full protection against self-incrimination which the constitution contemplates, and hence would not justify compelling him to answer when he claimed his privilege, since the facts disclosed might be proved against him by other evidence perhaps obtained and obtainable only by reason of the compelled disclosure.

4. A witness cannot invoke the claim of privilege for the purpose of shielding himself from civil liability; but under the constitution (art. I, sec. 8) construed in the light of the common law and of statutory declarations (sec. 4077, Stats.), in no case, whether civil or criminal, can a witness, in the absence of an immunity statute or its equivalent, be compelled to give an answer that may criminate him.

5. Upon reversing an order adjudging a witness in contempt for refusing to answer certain questions on the ground that the answers might tend to criminate him, where it appears that the trial court did not exercise its discretion as to what questions should be answered, but merely ruled that no privilege could be claimed in a civil action, the case is remanded for further proceedings, to the end that such discretion may be exercised in the first instance by the trial court.

6. The opinion of a witness that an answer to a question will tend to criminate him is not conclusive, but he should not be compelled to answer unless it is reasonably clear that the answer, whatever it may be, can have no such effect.

APPEAL from an order of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

Civil action for damages brought against the defendant *Conlan* and others for a criminal conspiracy to libel. The alleged dissemination of a printed circular, referred to as Exhibit 1, appears to form the basis of the action. It contains the following language:

"To the Honorable *John C. Karel,* County Judge of Milwaukee County: That the public records in the county court show the notorious fact that you have from time to time permitted crafty attorneys and guardians *ad litem* to plunder the estates of orphans and widows of thousands of dollars, and in some instances as high as twenty-five thousand dollars. . . . That while the widows and orphans have been clamoring to have their business transacted in the county court, you have been the pliant candidate for governor at the request of special interests, big business and tax dodgers, with or without pay."

After service of the summons, upon an affidavit therefor an order was obtained for an examination of the defendants under sec. 4096, Stats. 1911, to enable the plaintiff to plead. The examination was had before a court commissioner, and the defendant *Conlan,* after being ordered by the commissioner to answer, refused to answer a number of questions put to him by plaintiff's counsel on the ground that the answers would tend to incriminate him. The following are fair samples of the questions the witness refused to answer:

"Where did you first see the proof for the printed document Exhibit 1? Did you prepare the copy for this paper, Exhibit 1? Who gave the order for printing Exhibit 1? Who did you consult with before ordering this paper referred to, Exhibit 1, printed? Did you have any meeting of county committee, or any of its members, at which the matter of the issuance of Exhibit 1 was discussed? Who besides yourself had anything to do with the preparation of the copy for this paper Exhibit 1? How did this Exhibit 1 come to be issued or printed and circulated? When was Exhibit 1 first brought to your attention in its printed

form? Did you order it printed? How many did you
order printed? Did you show Exhibit 1 to Mr. Bollow at
any time before it was printed? Who gave the defendant
L. Breithaupt Printing Company, or any of its officers or
agents, directions about the printing of this document Ex-
hibit 1? Were you present at any time when any copy was
prepared or directions given in regard to the printing of
Exhibit 1 and its duplicates? Did you hire anybody to aid
in the distribution or to distribute them? Who paid for
the distribution of these papers, the mailing, postage stamps,
stationery, and the services involved in the mailing of them?
By whose suggestion was the stamp placed upon these papers
apparently made by a rubber stamp, Return to Room 300,
Foster Building, 403 Grand avenue, corner Fourth street?
Who ordered the stamp made? Did you have anything to
do with obtaining any room in the Foster Building or else-
where, for the purpose of having these papers distributed
and received after they had been sent out and returned?
Did you ever read the matter before it was printed, the mat-
ter contained in Exhibit 1? Did you believe the statements
in Exhibit 1 were true, before they were circulated? Did
Mr. Fred Lorenz and Mr. Theodore Kronshage, or either of
them, ever talk with you about issuing these circulars before
they were issued? Did Mr. Fred Lorenz talk with you
about it before they were printed? Had Mr. Theodore
Kronshage talked with you about it before they were printed?
Do you know whether or not the printing of this Exhibit 1
was done by the L. Breithaupt Printing Company?"

It appeared that one Frank L. Prescott distributed copies
of Exhibit 1 at the South Side Turn Hall, Milwaukee. The
witness was interrogated at length as to his connection with
such distribution, in each case refusing to answer the ques-
tions on the ground that the answers might tend to incrimi-
nate him.

The questions which the witness refused to answer were
certified to the circuit court and it affirmed the ruling of the
commissioner and ordered the witness to answer the ques-
tions. The witness again refused, claiming his constitu-
tional privilege, and the court commissioner adjudged him in

contempt, and ordered his imprisonment in the county jail of Milwaukee county until he shall answer the questions and pay the sum of $50 costs and expenses. The circuit court, upon review, entered an order affirming the order of the court commissioner, and from such order of the circuit court the defendant *Conlan* appealed.

The cause was submitted for the appellant on the brief of *Kronshage, Hannan & McMillan,* and for the respondent on that of *Doe & Ballhorn.*

VINJE, J. The appealability of the order is challenged by the respondent, and the cases of *Phipps v. Wis. Cent. R. Co.* 130 Wis. 279, 110 N. W. 207, and *Neacy v. Thomas,* 148 Wis. 91, 133 N. W. 580, are relied upon to sustain the challenge. In the former case it was held that the examination of a party under the provisions of sec. 4096, Stats., is both a special proceeding and a provisional remedy, but that an order requiring witnesses to produce certain books and papers made in the course of the examination was in no sense a final order within the meaning of sec. 3069, Stats., and therefore was not appealable. In the latter case the appeal was from orders requiring certain questions propounded to a witness to be answered by him and sustaining the witness's claim of privilege as to others. It was decided that such orders were not appealable, on the ground that they were merely rulings upon the admission or exclusion of evidence.

In the case before us, however, we have a ruling made by the circuit court affirming a ruling of a court commissioner that the witness be required to answer certain questions, the refusal of the witness to answer as directed, the finding of the court commissioner that the witness was in contempt, an order adjudging him to be in contempt and fixing his punishment therefor, and the affirmance of such order of the commissioner by an order of the circuit court. Such later order was a final order in a special proceeding within the

meaning of sec. 3069. Nothing further remained to be done. The guilt and punishment of the witness were finally adjudicated unless reversed upon appeal.

The gist of the action, as disclosed by the affidavit filed in support of the examination, is a conspiracy to libel the plaintiff. While the present action is a civil one for damages, if proven it would present facts tending to render appellant liable for a criminal conspiracy under sec. 4568, Stats. 1911, which provides that "Any person guilty of a criminal conspiracy at common law shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding five hundred dollars." It would also tend to subject him to punishment under the provisions of sec. 4569, which reads: "Any person guilty of libel shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding two hundred and fifty dollars."

Our statutes provide for no immunity for appellant in case of his giving incriminating evidence. The question, therefore, arises, Is he, in a civil action, privileged from answering under the principles of the common law and the constitutional provisions of this state and of the United States that no person "shall be compelled in any criminal case to be a witness against himself"? Sec. 8, art. I, Const.; U. S. Const. Fifth Amendm. It seems the circuit court held that, this being a civil action for damages, the witness could not successfully claim his privilege for the purpose of shielding himself from liability in the action, and that he could not avail himself of the constitutional privilege not to incriminate himself, because if he gave his answers under protest the information thus elicited could not be used against him in subsequent criminal proceedings. That a witness cannot invoke the privilege for the purpose of avoiding civil liability is settled by the provisions of sec. 4077, Stats., hereinafter referred to. The second ground given

by the circuit court is not tenable. The respondent cites the following cases as sustaining the decision of the trial court: *Keith v. Woombell,* 8 Pick. 211; *Boston & M. R. Co. v. State,* 75 N. H. 513, 77 Atl. 996; *People v. Cahill,* 126 App. Div. 391, 110 N. Y. Supp. 728, affirmed 193 N. Y. 232, 86 N. E. 39; *State v. Sieber,* 49 Oreg. 1, 88 Pac. 313; *Patterson v. Wyoming Valley Dist. Council,* 31 Pa. Super. Ct. 112; *U. S. v. Distillery,* 6 Biss. 483; *U. S. v. McCarthy,* 18 Fed. 87; *O'Neil v. People,* 113 Ill. App. 195; *In re Burrows,* 33 Kan. 675, 7 Pac. 148; *Cogan v. Cogan,* 202 Mass. 58, 88 N. E. 662; *State ex rel. Dye v. Reilly,* 40 Wash. 217, 82 Pac. 287; *In re Strouse,* 1 Sawy. 605; *U. S. v. Three Tons of Coal,* 6 Biss. 379; *Tom Wah v. U. S.* 163 Fed. 1008; *Law Chin Woon v. U. S.* 147 Fed. 227.

*Keith v. Woombell,* 8 Pick. 211, was an application in a suit in equity to obtain possession of a bond admitted by defendant to be under her control. It was held that she could be ordered to leave it with the clerk of the court, with liberty to the plaintiff to take a copy thereof. The remark in the opinion that the provision of the constitution that a subject is not to be compelled to "furnish evidence against himself" did not relate to a civil matter was purely *obiter.* It is evident that no subsequent criminal liability could arise from the inspection of the bond, and none was claimed. In *Boston & M. R. Co. v. State,* 75 N. H. 513, 77 Atl. 996, it was held in an action for abatement of taxes that a witness could not refuse to disclose material and relevant facts as to the value of his own property on the ground that such evidence would reveal the details of his private business affairs and might result to his pecuniary disadvantage. No fear of connecting the witness with any subsequent crime or degrading him in any manner was suggested in the case. In *People v. Cahill,* 126 App. Div. 391, 110 N. Y. Supp. 728, it was held that the privilege did not extend where there had been a pardon for the crime in question, or where statutes

Karel v. Conlan, 155 Wis. 221.

of limitation or immunity removed · the danger of prosecution, since, the object of the constitutional privilege was to protect the witness.  In *State· v. Sieber,* 49 Oreg. 1, 88 Pac. 313, it was held that under a constitutional provision that "no person shall be . . . . compelled in a criminal prosecution to testify against himself," the witness could not claim the privilege of refusing to answer on the ground that the answers might tend to show that he was guilty of violating an injunctional order issued in a suit between private parties, because a punishment for such violation was not a punishment for a crime within the meaning of the words "criminal prosecution" contained in the constitution.  Substantially the same was held in *Patterson· v. Wyoming Valley Dist. Council,* 31 Pa. Super. Ct. 112, that being a case to establish a contempt in an action affecting the rights of private parties.  It was held that such a proceeding was civil and not criminal, and such proceeding was distinguished from proceedings instituted solely for preserving the dignity and power of the court, which were held to be criminal and punitive in their nature, while those instituted for enforcing the rights of private parties to a suit were civil in their nature.  · The case of *U. S. v. Distillery,* 6 Biss. 483, was a prosecution under the internal revenue laws, and the court said: "The question, therefore, of compelling a person to accuse himself in a criminal case is not before the court." The case turned upon the construction of several federal· acts as to the power of the court to compel a defendant to produce certain books and papers relevant to the matter in issue. In the case of *U. S. v. McCarthy,* 18 Fed. 87, it was held the witness could not avail himself of the constitutional privilege, because sec. 860 of the Revised Statutes of the United States afforded complete immunity.  That part of the decision holding that the Fifth amendment to the constitution, providing that "no person shall be compelled in any criminal action to be a witness against himself," applies

only to evidence in suits or proceedings instituted against the witness himself, was expressly ruled to the contrary in *Counselman v. Hitchcock,* 142 U. S. 547, 12 Sup. Ct. 195. The cases of *O'Neil v. People,* 113 Ill. App. 195, and *In re Burrows,* 33 Kan. 675, 7 Pac. 148, involved contempt proceedings, irrelevant to any question at issue in this case. In *Cogan v. Cogan,* 202 Mass. 58, 88 N. E. 662, there was a petition for the appointment of a guardian for the respondent on the ground that he was insane. The court held that since the proceeding was civil and not criminal the respondent could properly be called and examined as a witness. So in the case of *State ex rel. Dye v. Reilly,* 40 Wash. 217, 82 Pac. 287, it was held that a contempt proceeding was not a criminal case within the meaning of sec. 9, art. I, Const., which provides that no person shall be compelled to give evidence against himself. *In re Strouse,* 1 Sawy. 605, was a case where books were required to be produced pursuant to the provisions of the Internal Revenue Act, and it was held that sec. 860 of the Statutes of the United States provided a complete immunity, therefore the constitutional provision did not apply. *U. S. v. Three Tons of Coal,* 6 Biss. 379, related to the production of books under the Internal Revenue Acts, and it was held that if the legislative protection against the witness's evidence being used against himself is as broad as the constitutional provision against a person incriminating himself, he could be compelled to answer. In *Tom Wah v. U. S.* 163 Fed. 1008, it was held that a Chinese person against whom deportation proceedings are pending may be called as a witness of the United States and may be compelled to answer questions relevant to the pending issue, since such proceedings were civil and not criminal. The same ruling was made in *Law Chin Woon v. U. S.* 147 Fed. 227.

It will thus be seen that the cases cited fall into several general groups quite distinct from the question presented in

this case. In some of the cases the issue was whether that particular proceeding was a civil or a criminal one. Of course, if it was a civil proceeding the defendant could be called as a witness. In others it was held that where the witness was protected by immunity statutes, by a pardon, by statutes of limitations, or by having served a sentence, he could not claim the constitutional privilege; and in still others it clearly appeared that the information called for had no tendency to incriminate or degrade the witness in any respect. In none was it held that if the witness testified under protest the information elicited could not be used against him in subsequent criminal proceedings. Such a rule, if one obtained, would not furnish the protection which the law contemplates. Immunity from using the evidence which discloses certain facts is not immunity from proving such facts by other evidence perhaps obtained and obtainable only by reason of the compelled disclosure.

Recurring now to the question of whether or not in a civil proceeding a witness can shield himself from giving incriminating evidence, reference should be had not only to the constitutional provision above quoted but to long established principles of common law and to statutory declarations on the subject. Sec. 4077, Stats. 1911, provides:

"Any competent witness in a cause shall not be excused from answering a question relevant to the matter in issue on the ground merely that the answer to such question may establish or tend to establish that such witness owes a debt or is otherwise subject to a civil action. But this provision shall not be construed to require a witness to give any answer which shall have a tendency to accuse himself of any crime or misdemeanor or to expose him to any penalty or forfeiture, nor in any respect to vary or alter any other rule respecting the examination of witnesses."

This is a literal copy of sec. 74, ch. 98, of the Revised Statutes of 1849, with only the substitution of the words "civil action" for the words "civil suit," and has remained

a part of our statutory law since. That the principal part of ·it was originally copied from 46 Geo. III, ch. 37, there can be little doubt. That statute provided "That a witness cannot by law refuse to answer a question relevant to the matter in issue, the answering of which has no tendency to accuse himself or to expose him to penalty or forfeiture, of any nature whatsoever, by reason only, or on the sole ground, that the answering of such question may establish or tend to establish that he owes a debt, or is otherwise subject to a civil suit, either at the instance of his Majesty, or of any other person or persons." The necessary implication from the latter statute, that when the answer tended to accuse himself or to expose him to penalty or forfeiture of any nature he could not be compelled to answer, was more clearly emphasized in our statute by the express provision that it should not be construed to require a witness to give such an answer. These statutes were but the crystallization of principles of law theretofore and since announced by the courts. *Trial of Freind* (1696), 13 How. St. Tr. 1, 16, 17; *Trial of Earl of Macclesfield* (1725), 16 How. St. Tr. 767, 1149, 1150; *Rèx v. Slaney* (1832), 5 Carr. & P. 213. The latter case is very similar to the one at bar. There was an information for libel, and a clerk was called and asked who wrote one of the libelous articles. He declined to answer because it might criminate him. TENTERDEN, C. J., ruled:

"He is not bound to do that, because it may be himself. You cannot only not compel a witness to answer that which will criminate him, but that which tends to criminate him; and the reason is this, that the party would go from one question to another, and though no question might be asked, the answer of which would directly criminate the witness, yet they would get enough from him whereon to found a charge against him."

That is as true .now as when it was uttered. The case of *Gates v. Hardacre* (1811), 3 Taunt. 424, was a civil ac-

tion by an indorsee against the drawer of a bill. The defense was usury. A witness was called and asked "whether that bill had ever been in his possession before." Upon being cautioned that the answer might tend to show him guilty of usury he declined to answer. The court refused to compel him, MANSFIELD, C. J., saying: "Your questions go to connect the witness with the bill, and they may be links in a chain." *Maloney v. Bartley* (1812), 3 Camp. 210, was also a civil case of libel, and a witness was excused from answering on the ground that the answer might tend to criminate him. These early English cases are referred to for the purpose of showing how ancient and well founded is the principle that in no case, whether civil or criminal, can a witness, in the absence of an immunity statute or its equivalent, be compelled to give an answer that may criminate or tend to criminate him.

This principle is well recognized in the jurisprudence of our own country. Perhaps the leading case on the subject is *Counselman v. Hitchcock,* 142 U. S. 547, 12 Sup. Ct. 195. In that case the authorities are cited and discussed, and the case of *People ex rel. Hackley v. Kelly,* 24 N. Y. 74, which held that the constitutional provision related only to cases in which the witness was a defendant, was disapproved. The court say:

"It is impossible that the meaning of the constitutional provision can only be that a person shall not be compelled to be a witness against himself in a criminal prosecution against himself. It would doubtless cover such cases, but it is not limited to them. The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime. The privilege is limited to criminal matters, but it is as broad as the mischief against which it seeks to guard." Page 562.

In *People ex rel. Lewisohn v. O'Brien,* 176 N. Y. 253, 68 N. E. 353, the *Kelly Case* is overruled, leaving the au-

thorities practically unanimous that the privilege can be invoked in any judicial proceeding. Rapalje on Witnesses, sec. 261, thus states the rule:

"*Nemo, tenetur seipsum accusare.*—Liberally translated, this maxim, which is one of the oldest of the common law, means that any person, whether a party or stranger to the litigation, either in a civil suit or criminal prosecution, may, if he sees fit, refuse to answer any question put to him as a witness, either on direct or cross-examination, the answer to which, if true, will render or tend to render him punishable for crime, or disgrace him, or render him infamous. The soundness of the principle introduced into the common law by this maxim has seldom been questioned. It has been incorporated among the guaranties of personal liberty and security in all the constitutions both of England and America, and has received the sanction of the most eminent jurists of both countries."

In the case of *In re Falvey,* 7 Wis. 630, the witnesses were compelled to testify in a legislative investigation because there was an immunity prescribed for in the act under which the investigation was had (see p. 641), and it is there said that "if the answer would tend to criminate or expose the witness to a criminal prosecution in the courts of another state or in the courts of the United States, he might not be compelled to answer." That the privilege may be claimed by a witness in a civil suit was expressly decided in *State ex rel. Hopkins v. Olin,* 23 Wis. 309. That was an action to try title to an office, and it was held that a witness could not be compelled to testify whether he voted at a particular election if the evidence would tend to criminate him.

The constitutional provision of Massachusetts is that no subject shall "be compelled to accuse, or furnish evidence against himself." In construing this provision in *Emery's Case,* 107 Mass. 172, 181, the court says:

"By the narrowest construction, this prohibition extends to all investigations of an inquisitorial nature, instituted

for the purpose of discovering crime, or the perpetrators of crime, by putting suspected parties upon their examination in respect thereto, in any manner; although not in the course of any pending prosecution.

"But it is not even thus limited. The principle applies equally to any compulsory disclosure of his guilt by the offender himself, whether sought directly as the object of the inquiry, or indirectly and incidentally for the purpose of establishing facts involved in an issue between other parties. If the disclosure thus made would be capable of being used against himself as a confession of crime, or an admission of facts tending to prove the commission of an offense by himself, in any prosecution then pending, or that might be brought against him therefor, such disclosure would be an accusation of himself, within the meaning of the constitutional provision. In the absence of regulation by statute, the protection against such self-accusation is secured by according to the guilty person, when called upon to answer as witness or otherwise, the privilege of then avowing the liability and claiming the exemption; instead of compelling him to answer and then excluding his admissions so obtained, when afterwards offered in evidence against him.

"This branch of the constitutional exemption corresponds with the common-law maxim, *Nemo tenetur seipsum accusare,* the interpretation and application of which has always been in accordance with what has been just stated. Broom, Max. (5th ed.) 968; Wingate, Max. 486; Rosc. Crim. Ev. (2d Am. ed.) 159; Stark. Ev. (8th Am. ed.) 41, 204, and notes; 1 Greenl. Ev. § 451, and notes."

For a full and late discussion of the subject, see 1 Wharton, Crim. Ev. (10th ed.) §§ 463 *et seq.;* 30 Am. & Eng. Ency. of Law (2d ed.) 1154 *et seq.* See, also, *People ex rel. Taylor v. Forbes,* 143 N. Y. 219, 228, 38 N. E. 303; *People v. Priori,* 164 N. Y. 459, 464, 58 N. E. 668; *Minters v. People,* 139 Ill. 363, 29 N. E. 45; *Ex parte Carter,* 166 Mo. 604, 66 S. W. 540; *Poindexter v. Davis,* 6 Grat. 481; *Broadbent v. State,* 7 Md. 416.

In view of our statutory and constitutional provisions

and the almost uniform rule of law that has obtained in England and in this country from the earliest times, there can be no question but that the privilege extends to a witness in a civil proceeding as well as in a criminal case. To hold otherwise would be to emasculate the essential principle of the rule, for the commission of nearly every crime carries with it a civil liability. A person suspected of a crime could be proceeded against civilly and compelled to disclose the very facts essential to a conviction, leaving him practically without any privilege whatever. The maxim of *Nemo tenetur seipsum accusare* was so firmly entrenched in English law that the framers of our own constitution evidently did not deem it necessary to specifically declare it as to civil cases where only private interests were at stake and the incriminating facts were desired only in order to establish a civil liability for the benefit of a private party. But it was deemed essential to declare the rule in criminal cases for the purpose of negativing the right of the state itself to elicit such information even in the administration of the criminal law which affects the public at large.

The circuit court, therefore, erred in ruling that the witness was compelled to answer the questions propounded to him, or at least a major portion of them. And since the discretion of that court was not exercised upon what questions should or should not be answered, we deem it better practice to reverse the order and remand the case for further proceedings, to the end that such discretion may be exercised by the trial court in the first instance, rather than that this court should pass upon the matter now. The rule should be borne in mind that while the opinion of the witness that an answer to a question will tend to criminate him is not conclusive upon the trial court, yet the witness should not be compelled to answer unless it appears reasonably clear that the answer, whatever it may be, can have no such effect. *Kirschner v. State,* 9 Wis. 140; *Emery v.*

*State,* 101 Wis. 627, 78 N. W. 145; *Rudolph v. State,* 128 Wis. 222, 230, 107 N. W. 466; *Counselman v. Hitchcock,* 142 U. S. 547, 12 Sup. Ct. 195; *McGorray v. Sutter,* 80 Ohio St. 400, 89 N. E. 10, and note to same in 24 L. R. A. N. s; 165 *et seq.,* where the authorities are collected.

The result reached renders it unnecessary to consider the other errors relied upon for reversal.

*By the Court.*—The order appealed from is reversed, with directions to vacate and set aside the contempt proceedings and the order of commitment entered therein, and the cause is remanded for further proceedings according to law.